STATE of Indiana, Indiana Department of State Revenue, Inheritance Tax Division, Appellant,

v.

Elsie K. GEORGE, sole heir of the Estate of Herman Goepp, Appellee.

No. 380S75.

Supreme Court of Indiana.

March 19, 1980.

Theodore L. Sendak, Atty. Gen. of Indiana, Susan Bowron White, Deputy Atty. Gen., Indianapolis, for appellant.

James R. Lakin, John R. Nesbitt, Nesbitt, Fisher, Daugherty & Nesbitt, Rensselaer, for appellee.

PIVARNIK, Justice.

This cause comes to us on a petition to transfer filed by appellee, Elsie K. George, following an opinion and judgment unfavorable to her in the Court of Appeals. We hold that the Court of Appeals erred in its interpretation of the state inheritance tax laws, and we accordingly vacate the opinion of the Court of Appeals and affirm the judgment of the trial court.

Herman Goepp died intestate on January 13, 1974, leaving his sister, Elsie K. George, as his sole heir. The trial court allowed Mrs. George to exclude, for inheritance tax purposes, fifty percent of the value of properties she held jointly with Goepp. The inheritance tax assessment was made accordingly. The State's inheritance tax division of the Department of Revenue appealed, claiming that Mrs. George failed to prove that fifty percent of the value of the properties originally belonged to her and never to Goepp. After Goepp's death, Mrs. George filed a schedule of his property for inheritance tax appraisement. On October 21, 1975, the court entered its order determining the value of the estate and the amount of inheritance tax due. The court found the total gross value of the estate to be $2,557.21, with deductions for debts and expenses in the amount of $7,004.62. The court valued transfers outside the estate at $104,771.84. This figure represented fifty percent of the property held jointly by Goepp and George. The jointly held properties included real estate valued at $183,300, stock, a certificate of deposit, savings bonds, and a checking account. The total value of the property was reduced by $104,071.84, the amount George claimed to have contributed. The court valued the interest George received at $100,324.43, and imposed an inheritance tax of $5000.95. A petition filed by the State for rehearing, reappraisement and redetermination, was denied after a hearing, and the State's motion to correct errors was also denied.

The pertinent portion of the inheritance tax law in effect at the time this case arose is expressed in two paragraphs of Ind.Code § 6–4–1–1 (Burns 1971), as follows:

" . . .

All transfers enumerated in this section shall be taxable, if made by will; or if made by the statutes regulating intestate descent; or if made in contemplation of death of the transferor, and any transfer of property made by a person within two (2) years prior to death, shall unless shown to the contrary, be deemed to have been made in contemplation of death; or if made by gift or grant intended to take effect in possession or enjoyment at or after the death of the transferor; or if made in payment of a claim against the estate of a deceased person arising from a contract or antenuptial agreement made by him and payable by its terms by will or contract at or after his death; and if any transfer falling under the foregoing

provisions is made for valuable consideration, excepting love and affection, so much thereof as is the equivalent in money value of consideration received by the transferor shall not be taxed but the remaining portion shall be.

Whenever property is held in the joint names of two (2) or more persons or is deposited in banks, or other institutions or depositaries in the joint names of two (2) or more persons and payable to either or the survivor, upon the death of one (1) of such persons, the exercise of the right of the surviving person or persons to the immediate ownership or possession and enjoyment of such property shall be deemed a transfer taxable under the provisions of this act in the same manner as though the whole property to which such transfer relates belonged absolutely to the deceased joint owner or joint depositor and had been devised or bequeathed to the surviving person or persons, by such deceased joint owner or joint depositor by will, excepting therefrom such part thereof as may be proved by the surviving joint owner or joint owners to have originally belonged to him or them and never to have belonged to the decedent: Provided, however, that property jointly held shall not be taken to include real estate held by the entireties."

George was permitted to exclude from taxation fifty percent of the value of the property she held jointly with Goepp on the basis of her "Contribution Affidavit." This document sets forth the following grounds for the exclusion:

1. I am related to Herman Goepp as a full sister.
2. I was married at any early age, divorced, and then returned to my home in Barkley Township, Jasper County, Indiana, to live with and care for my parents (about 1928). My brother, German [sic] Goepp also continued to live at home.
3. The family farmed our 296 acres and, after our parents died, I continued to help farm and keep up the housework at the farm.

4. My brother, Herman Goepp, eventually received title to the whole 296 acres but from the time the farm income tax started (as best as I can remember) until the date of my brother Herman's death on January 13, 1974, I filed my income tax on one-half (½), the farm income and Herman and I kept everything in joint accounts, with survivorship rights. We considered everything as 50–50. In 1960, Herman put the 296 acre farm in our joint names.

5. I hereby claim 50% of all property held jointly by Herman Goepp and myself (as shown on the estate tax schedule) as my contribution in the sum of $104,071.84. I make this claim based on the services I rendered over all the years after I returned home in 1928, including both household and farm hand help."

Record at 16. George contends that this affidavit, which was not controverted in any way, proved that she gave full and adequate consideration for the value of her one-half interest in the joint tenancy in both the real and personal property. The federal Internal Revenue Service accepted this argument and taxed the joint tenancy accordingly. The trial court, at the hearing to redetermine inheritance tax, also accepted this contention, and entered judgment accordingly.

The Court of Appeals gave an overly strict interpretation to § 6–4–1–1, when it provided that in order to obtain the exclusion George would have to show that the jointly held property belonged to her and never belonged to Goepp. The Court of Appeals stated that since the facts showed the property was titled in Goepp from 1928 to 1960, when he conveyed a joint tenancy to her, this shows that it belonged to him up until that time and not to her. Therefore, the Court held, under the statute, it is taxable as a transfer at the time of his death. From this interpretation, it would follow that even if he gave it to her as an outright inter vivos gift and the gift taxes were paid thereon, or if he conveyed it to her at that

time in joint tenancy and she paid the full market value for her share and paid the income tax at that time, it would still be taxable now as a transfer, since it belonged to him and not to her at the time of transfer.

It is a long established principle that when we attempt to determine the legislative intent of a particular statute, the intention of the legislature as ascertained from the act as a whole will prevail over the strict literal meaning of any word or term used. *See Weidler v. Floran*, (1938) 105 Ind.App. 564, 13 N.E.2d 330. *See also* 1956 Op.Atty.Gen. 80. Furthermore, such a rule is particularly applicable where adherence to the letter of the law would lead to injustice, absurdity, or contradictory provisions. *See Helms v. American Securities Co. of Indiana*, (1939) 216 Ind. 1, 22 N.E.2d 822. We must, then, look to the general intent indicated in the inheritance tax law as a whole, to ascertain the legislature's intent.

 Clearly, the legislative intent was to tax transfers that take effect on the death of the testator. This is true of joint tenancies with rights of survivorship, as well as other transfers. No taxable transfer is contemplated when there has been a transfer prior to death for good and valuable consideration other than love and affection. The first paragraph of § 6–4–1–1, set out above, states those transfers that will be taxable under our inheritance tax law, and excludes those for which good and valuable consideration has been given. The second paragraph, discussing joint tenancies, then, must be read in conjunction with the first paragraph. Therefore, even if it could be said under the facts presented here that the property did belong to Goepp in and prior to 1960, George was entitled to the exclusion here, since the facts did show that she gave good and valuable consideration for her one-half interest.

 Secondly, there is a great deal of merit to George's contention that prior to 1960 the property actually did belong to her and Goepp and not to Goepp exclusively. Title to the property here was handed down from the parents of Goepp and George. There is no reason given for the title being placed in the name of Goepp only, although inferences can be drawn from the reference in the affidavit to Elsie George's unsuccessful marriage. At any rate, Goepp and George lived on the property and farmed it together as a fifty-fifty proposition in all respects, for a period of thirty-two years prior to 1960, and a total of forty-six years until the time of his death in 1974. Fourteen years passed from the time of the title transfer to Herman Goepp's death. The trial court interpreted the facts to be that the parties treated the property in question as though it belonged to each of them from the time of their parents' death, and that the conveyance by Goepp to George in 1960 only confirmed the factual situation that existed prior to the transfer.

For all the foregoing reasons, there was no taxable transfer of the one-half interest of the jointly held property belonging to George, and the trial court properly excluded it from the inheritance tax determination. We accordingly reverse the Court of Appeals, vacate its opinion, and affirm the judgment of the trial court.

All Justices concur.