**CITIZENS ACTION COALITION OF INDIANA, INC., City of Terre Haute, Save the Valley, Inc., and Virgil and Sara Bowling, Appellants,**

v.

**PUBLIC SERVICE COMPANY OF INDIANA, INC., Office of the Utility Consumer Counselor, and Indiana Utility Regulatory Commission, Appellees.**

No. 93A02–8706–EX–250.

Court of Appeals of Indiana, Third District.

June 27, 1990.

Michael A. Mullett, Columbus, for appellants Citizens Action Coalition of Indiana, Inc. and Virgil and Sara Bowling.

Max E. Goodwin, Mann, Chaney, Johnson, Goodwin & Williams, Terre Haute, for Appellants City of Terre Haute and Save the Valley, Inc.

Robert F. Hellman, Terre Haute, for appellant City of Terre Haute.

Virgil L. Beeler, Fred E. Schlegel, Mary M. Stanley, Baker & Daniels, Indianapolis, Jon D. Noland, Duejean C. Garrett, Ronald J. Brothers, Public Service Co., of Indiana, Inc., Plainfield, for appellee Public Service Co. of Indiana, Inc.

Robert K. Johnson, Claudia J. Earls, Office of the Utility Consumer Counselor, Indianapolis, for appellee Office of the Utility Consumer Counselor.

Linley E. Pearson, Atty. Gen., Brenda Franklin Rodenheffer, Deputy Atty. Gen., Indianapolis, for intervenor appellee Indiana Utility Regulatory Com'n.

GARRARD, Judge.

Citizens Action Coalition of Indiana, Inc., City of Terre Haute, Save The Valley, Inc. and Virgil and Sara Bowling (hereinafter collectively referred to as "CAC") appeal the Public Service Commission's ("Commission") 1987 rate order with respect to the Public Service Company of Indiana, Inc. (PSI). Because the issues CAC seeks to raise herein were not first presented to the Commission in the proceedings below, we do not reach the merits of the appeal. Accordingly, we leave the Commission's order undisturbed.

### FACTS

In 1984 PSI abandoned its efforts to construct a nuclear powered electricity generating station at Marble Hill (R. 119). As a consequence of the decision to cancel the project, PSI found itself in a precarious financial condition. Under Cause No. 37414, PSI petitioned the Commission (now known as the Indiana Utility Regulatory Commission) to establish emergency interim rates and then permanent electricity rates in order to allow PSI to, among other things, maintain operations, regain access to long and short term capital markets at reasonable rates, and avoid insolvency. The abandonment of the Marble Hill Project caused PSI to face a net operating loss (NOL) of $1.4 billion. To make use of that NOL, the Commission's 1986 rate order (Cause No. 37414), as based upon a settlement agreement between several but not all of the parties, provided for the booking of a "regulatory asset" consisting of the federal income tax savings of approximately $475 million, to be realized by deducting the abandonment loss from taxable income. Through the 1986 rate order, the Commission sought to provide PSI with sufficient revenue and, in turn, taxable income to "exhaust" the regulatory asset by 1990.

As the Commission noted, "PSI's ability to record future tax benefits as an asset sufficient to avoid a negative net worth depends upon assurances beyond a reasonable doubt that the asset will be recovered." (R. 121). That finding flowed from testimony before the Commission indicating that, because PSI's securities are publicly traded, Security and Exchange Commission (SEC) rules and regulations (and the general accounting principles they directly and indirectly incorporate) require that in order to be reflected on a corporation's books the existence of such an "asset" must be "assured beyond a reasonable doubt." (R. 122). Acknowledging on the corporation's books that federal income taxes had declined would require that PSI proportionately reduce the value of the "asset"—something apparently unacceptable under the agreement with the SEC to let PSI show the NOLs as an asset. There-

fore, the Commission included a provision in its 1986 rate order that PSI's retail rates would not be adjusted to reflect any reductions in federal or state income taxes. Instead, the Commission provided that in the event of any such reduction in actual income tax liability, this "regulatory asset" would be reduced by "a charge to the cost of service in lieu of tax expense ... equal to the difference between the tax benefits realized by PSI ... and the tax benefits which would have been realized if computed at the [pre–1986 rate]." (R. 122–23, 160). The Commission's order also anticipated future guidelines for dealing with any portion of the asset not "exhausted" in the anticipated time frame due to insufficient taxable income.

Under IC 8–1–2–58, the Commission is empowered to initiate investigations of "matters relating to any public utility." On November 6, 1986, the Commission established in accordance with its authority to appoint investigative agents under IC 8–1–2–51, an executive committee to assist with the Commission's study of the appropriate impact of the 1986 Tax Reform Act (TRA) upon Indiana utility rates. (Cause No. 38194). Upon the submission of the executive committee's report (filed April 15, 1987 and presented at a public hearing May 13–16, 1987), the Office of the Utility Consumer Counselor (OUCC) moved the Commission to establish a separate subdocket for each utility. With the executive committee's conclusion that the TRA generally meant lower federal income tax expenses for Indiana utilities, the individual dockets were established as a means to allow the utilities to show cause why their rates ought not be concurrently reduced. However, the executive committee recommended an exception to that presumptive procedure for those utilities which then had a rate case pending before the Commission or which had received a general rate order subsequent to January 1, 1986 in which the Commission had considered the effects of the TRA.

As PSI's 1986 rate order (Cause No. 37414) had been entered March 7, 1986, it fell into the latter category. During the

May 1987 hearings, the executive committee report was introduced in all subdockets of Cause No. 38194 including PSI's subdocket (Cause No. 38194–135). PSI sponsored no evidence or exhibits in its subdocket. Instead, PSI requested that the Commission take "administrative notice" for purposes of incorporation its order in Cause No. 37414. On the basis of (1) the Commission's prior order regarding the necessity of ignoring federal income tax reductions in order to assure the realization of the regulatory asset and (2) the recommended exception for utilities previously subjected to 1986 rate orders, PSI argued that no change should be made in its rates. The Commission agreed with one commissioner concurring and another dissenting. From that finding, CAC has perfected this appeal of Cause No. 38194–135 (the 1987 rate order).

## ISSUE

CAC presents two substantive issues. PSI structures its response in seven issues and focuses upon several claimed procedural deficiencies of the appeal. The brief of the OUCC and that of the Commission (which was permitted to intervene by order of this court) each address several of the procedural matters raised by PSI but add no independent issues. Our discussion focuses upon one issue: whether CAC, which intervened below, or ratepayers, strangers to the action below who exercise their statutory right to appeal Commission orders, may attack the Commission's actions on grounds not asserted by any party below.

## DISCUSSION

■ The Commission and the OUCC join PSI in its contention that CAC can be afforded no relief in this appeal because "each of the substantive arguments now advanced by the Appellants is made for the first time to this Court. They were not made to the Commission below—by the Appellants or any other party." (emphasis omitted) (Brief of Appellee PSI at 15, Brief of Appellee OUCC at 10, Brief of Appellee

Commission at 3). CAC's two issues concern (1) whether the Commission erred and thereby entered an order based on less than "substantial evidence" when it employed "administrative notice" in order to adopt in the present cause its findings in a prior order that federal income tax reductions which would devalue a "regulatory asset" ought not, on account of the utility's financial emergency, be considered for ratemaking purposes and (2) whether the Commission's prior ruling as incorporated into the present order, which required the utility, for ratemaking accounting in the event of reduced federal income taxes, to further reduce or utilize the "regulatory asset" in an amount equal to the difference between the projected tax expense (which ignored the effect of the tax abandonment losses because the benefit of those NOLs had been assigned to the shareholders [1]) and the "actual" (again ignoring NOLs) post-TRA tax expense by creating a charge to the cost of service, is contrary to law in that it allows the utility to recover through rates, under the guise of cost of service, sums necessary only to assure that the company would realize the tax benefits of the regulatory asset. We agree that these issues were not raised below and cannot be addressed here.

CAC, and in particular the Bowlings, rely upon IC 8–1–3–1 to claim that the issues they attempt to raise are properly before this court. That statute provides as follows:

Any person ... adversely affected by any final decision, ruling, or order of the commission may, within 30 days from the date of entry of such decision, ruling, or order, appeal to the court of appeals of Indiana for errors of law under the same terms and conditions as govern appeals in ordinary civil actions, except as otherwise provided in this chapter and with the right in the losing party or parties in the court of appeals to apply to the supreme court for a petition to transfer the cause to said supreme court as in other cases. An assignment of errors that the

---

1. *See Citizens Action Coalition v. Public Service Co. of Ind., Inc.* (1990), Ind.App., 552 N.E.2d 834

(affirming allocation of income tax deductions to shareholders).

decision, ruling, or order of the commission is contrary to law shall be sufficient to present both the sufficiency of the facts found to sustain the decision, ruling, or order, and the sufficiency of the evidence to sustain the finding of facts upon which it was rendered.

We disagree with CAC's interpretation of that statute. We find that the statute controls questions of who may appeal a Commission order and how that appeal is perfected, but we find that the statute does not alter the fundamental rule of judicial review that a court will not consider questions not raised in the administrative proceeding below. *See, e.g., Indianapolis, Decatur and Western Railway Co. v. Hood* (1892), 130 Ind. 594, 30 N.E. 705; *Farmers State Bank v. Department of Fin. Institutions* (1976), 171 Ind.App. 145, 355 N.E.2d 277.

This exhaustion of remedies rule has been held applicable in appeals from Commission rate orders. *See City of Evansville v. Southern Indiana Gas & Electric Co.* (1977), 167 Ind.App. 472, 504, 339 N.E.2d 562, 582–83. In *City of Evansville* this court held that "[s]ince the City failed to dispute the validity of the allocation method *at the hearing*, the City cannot challenge, for the first time on appeal, the adequacy of the Commission's basic findings [with respect to the allocation]...." (emphasis in original) *Id. City of Evansville* and the principle of judicial review it represents bars us from considering CAC's claims. As discussed below, the fact that the appeal in *City of Evansville* was brought by an intervenor in the Commission proceedings does not alter our analysis.

■ CAC confuses who may appeal with what issues they may raise and how those issues are brought before the reviewing court. Adversely affected ratepayers, such as the Bowlings claim to be, who failed or chose not to intervene pursuant to 170 IAC 1–1–6(d) in the proceedings before the Commission may bring an appeal from the Commission's rate order. However, their participation in the appeal does not create a trial *de novo* in this court such that mat-

ters of law or fact not submitted to the adversarial process below can be addressed here. This court will reach the merits only in those appeals where the appellant(s), intervenor(s) below or stranger(s) to the Commission proceedings, address matters administratively exhausted. To interpret the statute otherwise would deny the Commission the opportunity to formulate the issues and correct its own errors, would deny this court the benefit of the Commission's expertise, and would be unfair to both the litigants and those involved in the tasks of administration. *See* Fuchs, *Prerequisites to Judicial Review of Administrative Agency Action*, 51 Ind.L.J. 817, 859–62 (1976). Courts ought "not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *United States v. L.A. Tucker Truck Lines, Inc.* (1952), 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54, 58. In *Tucker* the Supreme Court was not relying upon any statute or administrative rule precluding the court in question from reviewing issues not first raised before the agency; instead, that Court apparently concluded that traditional exhaustion principles of administrative law and judicial review required such an approach. *See Cotherman v. Federal Trade Commission* (5th Cir.1969), 417 F.2d 587, 594.

■ CAC's position with respect to this issue rests in large part upon its misinterpretation of the last sentence of IC 8–1–3–1. We read that sentence to provide that a would-be appellant's general assignment of error that the Commission's order is "contrary to law" is sufficient to preserve for appeal both aspects of our review of Commission actions. *See, e.g., Citizens Action Coalition of Ind., Inc. v. Public Service Co. of Ind.* (1983), Ind.App., 450 N.E.2d 98, 101–102. That says nothing about raising issues not litigated below. The matters CAC seeks to raise here are not merely challenges to the sufficiency of the evidence or of the findings. Instead, CAC attacks with new swords the Commission's ruling on the grounds that it is contrary to

law both procedurally and substantively. Had the legislature intended that this be permitted, it would have included in IC 8–1–3–1 a provision similar to IC 4–21.5–5–10. That provision of the Administrative Orders and Procedures Act (which does not apply to the Commission) provides conditions under which "[a] person may obtain judicial review of an issue that was not raised before the agency." CAC has it backwards when it argues that the legislature's failure to include a provision similar to IC 4–21.5–5–10 in IC 8–1–3–1 suggests an intent to allow the tactic attempted here.

Likewise, IC 8–1–3–2, which permits but does not require appellants to petition the Commission for a rehearing, does not represent an intent to abandon traditional exhaustion rules. Petitions for rehearing of this court's rulings are permitted but not required before petitioning for transfer to the supreme court. *See* Appellate Rule 11(B). Similarly, in many cases motions to correct error are not required in order to appeal a trial court's ruling to this court. *See* Trial Rule 59(A). We reject CAC's argument that the legislature's decision not to require petitions for rehearing indicates an intent to abandon traditional exhaustion rules.

Finally, we note that the statute in issue specifically provides that appeals to this court "for errors of law [shall be controlled by] the same terms and conditions as govern appeals in ordinary civil actions." IC 8–1–3–1. The rule in ordinary civil cases that matters which were not litigated below and errors which were not preserved cannot be raised on appeal is so well established as to need no citation of authority. The legislature's exception to the usual civil rules in IC 8–1–3–1 for matters treated elsewhere in IC 8–1–3 is not implicated here.

■ Our prior decision to deny without opinion PSI's motion to dismiss as offered on the very ground we rely upon for our holding does not preclude us from ruling in its favor on those grounds today. The matter has been fully briefed and we now endorse PSI's argument. Our opinion to-

day is based exclusively upon the sole issue we have expressly addressed and we offer no analysis of the other matters briefed. Therefore, because the traditional guidelines for judicial review of administrative actions preclude us from considering questions of law (or fact) not raised below, we leave undisturbed the Commission's 1987 rate order.

Affirmed.

STATON, J., concurs in result.

BAKER, J., concurs and files separate opinion.

BAKER, Judge., concurring.

Notwithstanding my dissent in *Citizens Action Coalition v. Public Serv. Co. of Ind.* (1990), Ind.App., 552 N.E.2d 834, I concur with the majority. Regardless of the propriety of those acts by the Commission that CAC now challenges, the majority correctly holds that neither CAC nor any strangers to the Commission's proceedings may now raise issues not raised before the Commission.

I concur.