Roy P. SCHEID, Petitioner,

v.

**STATE BOARD OF TAX COMMIS-
SIONERS and the State of
Indiana, Respondents.**

No. 49T05–9002–TA–00007.

Tax Court of Indiana.

Oct. 5, 1990.

Jack H. Frisch, Michael J. Donahoe, Ep-
stein & Frisch, Indianapolis, for petitioner.

Linley E. Pearson, Atty. Gen. by Marilyn
S. Meighen, Deputy Atty. Gen., Indianapo-
lis, for respondents.

FISHER, Judge.

Roy P. Scheid (Scheid) appeals the
Indiana State Board of Tax Commissioners'
(State Board) final determination denying a
petition for reassessment pursuant to IC
6–1.1–4–11 for property destroyed by a
fire. This matter is before the court on
Scheid's motion for summary judgment and
the State Board's motion for summary
judgment.

On March 1, 1988, Scheid's property was
assessed at values of $160,230 for the
building and $27,270 for the real estate.
Eight weeks later on May 3, 1988, the
building was destroyed and the real estate
was damaged by fire. Scheid maintains
that the loss from the destruction of the
building and its contents totalled $3,000,-
000, and the damage to the real estate
totalled $1,085,000. On October 6, 1989,
Scheid petitioned for reassessment of the
property for the 1988 taxes due in May and
November of 1989. On December 29, 1989,
the State Board denied Scheid's petition
"For Survey and Reassessment [of] Real
and Personal Property Partially or Totally
Destroyed by Disaster" because the fire
was not a disaster. Scheid has paid the
1988 taxes.

In his motion for summary judgment,
Scheid contends that the State Board erred
in denying the petition for reassessment
because the fire that destroyed his proper-
ty was a "disaster." The State Board con-
tends that a reassessment can be conduct-
ed only when the following two events
occur: 1) when a substantial amount of

real and personal property in a township has been destroyed, which means a substantial amount of the township's total property, and 2) when such property is destroyed by a disaster, and that a fire is a disaster only when it is a widespread fire. The State Board contends in its motion for summary judgment that a substantial amount of property in the township has not been partially or totally destroyed.

## ISSUES

The following issues are before the court:

1) Should the State Board in its motion for summary judgment be permitted to raise the issue of whether a "substantial amount" of property in the township was partially or totally destroyed when this issue was neither raised by either party during the administrative process nor cited as a basis for denial of reassessment in the State Board's written finding?

2) Are there any genuine issues of material fact remaining as to whether the State Board's determination that the Scheid fire was not a disaster is according to law and is not an abuse of discretion?

## DISCUSSION AND DECISION

■ The State Board's motion for summary judgment is based solely upon the contention that a "substantial amount" of property in the township has not been partially or totally destroyed. The State Board neither based its final determination on this reason in denying Scheid's petition for reassessment nor addressed the issue in any manner at the administrative level. The State Board first raised this issue upon filing its motion for summary judgment in this court.

In *Hoosier Energy Rural Electric Cooperative, Inc. v. Indiana Department of State Revenue* (1988), Ind. Tax, 528 N.E.2d 867, 869, this court held that its scope of review extended beyond issues argued at the administrative level because the appeal was to be heard *de novo*[1], that is, all evidence admissible could be presented for the first time before the court. *Blood v. Poindexter* (1988), Ind. Tax, 524 N.E.2d 824, 825. The court's scope of review in the case at bar, however, is limited to:

a consideration of whether or not there is any substantial evidence to support the findings and order of the administrative body. A court may also determine whether or not the action constitutes an abuse of discretion and is arbitrary or capricious, as revealed by the uncontradicted facts.

In order for the reviewing court to do this limited task, it is of course, necessary that written findings be before the court. *Stokely–Van Camp, Inc. v. State Bd. of Tax Comm'rs* (1979), 182 Ind.App. 91, 94, 394 N.E.2d 209, 211 (citations omitted).

A written finding is before the court. Nevertheless, the State Board raises here for the first time an additional reason for denying the reassessment. There are no written findings before the court pertaining to this newly raised reason. An agency generally may not support its determination by referring to reasons which are not ruled on previously but which are offered as *post hoc* rationalizations. *Burlington Truck Lines, Inc. v. United States* (1962), 371 U.S. 156, 168–69, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207.

Additionally, parties may not raise new issues of law not addressed at the administrative level. *Citizens Action Coalition v. Public Service Co.* (1990), Ind.App., 556 N.E.2d 328, 332–33. There are, however, exceptions to this general rule. In *Hormel v. Commissioner* (1941), 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037, the Commissioner of the Internal Revenue Service raised a new theory and code section to support the imposition of tax. The Circuit Court of Appeals addressed the issue even though it was not the basis of the Commissioner's original finding. The Supreme Court held:

Ordinarily an appellate court does not give consideration to issues not raised below. For our procedural scheme contemplates that parties shall come to issue in the trial forum vested with authority

---

1. IC 6–8.1–9–1(d).

to determine questions of fact. This is essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues which the trial tribunal is alone competent to decide; it is equally essential in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence. And the basic reasons which support this general principle applicable to trial courts make it equally desirable that parties should have an opportunity to offer evidence on the general issues involved in the less formal proceedings before administrative agencies entrusted with the responsibility of fact finding. Recognition of this general principle has caused this Court to say on a number of occasions that the reviewing court should pass by, without decision, questions which were not urged before the Board of Tax Appeals.... [Nevertheless,] [t]here may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below.

Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy. Orderly rules of procedure do not require sacrifice of the rules of fundamental justice. *Id.* at 556–57, 61 S.Ct. at 721 (citations omitted).

The Court held that the Circuit Court of Appeals correctly addressed the new issue, partially because the income was clearly taxable under the newly raised code section. *Id.* at 560, 61 S.Ct. at 723.

"Several factors should be considered before exercising the discretion to hear new issues. Perhaps foremost is whether the issue goes to the integrity of the fact find-

ing process." *In Re Hawaiian Land Co.* (1971), 53 Haw. 45, 53, 487 P.2d 1070, 1076, *appeal dismissed*, 405 U.S. 907, 92 S.Ct. 938, 30 L.Ed.2d 778 (1972). In that case, the court addressed the new issue because

[b]oth parties presented extensive evidence and vigorously argued what they felt was the proper valuation of the property thereby fully developing the factual basis. This issue does not attack the integrity of the fact finding process, but only whether the findings justify lowering the assessment. Moreover, ... the parties were required to and did submit supplemental briefs and this issue has been fully and ably argued. *Id.* at 53, 487 P.2d at 1076.

In the case at bar, several facts pertinent to the "substantial amount" issue are now before the court which were not addressed at the administrative level. Scheid presents in an affidavit supporting the motion for summary judgment the dollar amount of loss, which exceeds $4,000,000. The State Board's motion for summary judgment and affidavit provide a comparison of the value of Scheid's destroyed property to the total value of the township property. It is the integrity of the process by which these facts were found, rather than the facts themselves, with which this court is concerned. The value of all the township property, the percentage of the total township property destroyed, and the amount of the loss were not addressed at the administrative level. Furthermore, the State Board fully briefed the issue in its motion for summary judgment; however, Scheid first addressed the issue at the hearing on the summary judgment motions. Consequently, this is not a case where the parties have presented extensive evidence or where the issue has been vigorously argued by both parties.

Furthermore, an injustice will not occur if the court does not permit the State Board to address this issue. Unlike the *Hormel* case, 312 U.S. 552, 61 S.Ct. 719, this is not a case where the State Board's interpretation is clearly correct. The State Board asserts that in order for a substantial amount of property to be partially or

totally destroyed, the value of property lost must be compared to the total value of all township property. In the case of *Indiana State Board of Tax Commissioners v. Holthouse Realty Corp.* (1976), 170 Ind. App. 232, 352 N.E.2d 535, the Indiana Court of Appeals did not use the formula proffered by the State Board to determine if a substantial amount of property had been partially or totally destroyed. In that case, several buildings had been destroyed, but if the State Board's formula were applied, the value of the property destroyed would likely be small compared to the value of the entire township. To some, a loss of over $4,000,000 is a "substantial amount" of property in the township.

In light of Indiana's clear policy requiring exhaustion of administrative remedies, *Citizens Action Coalition,* 556 N.E.2d 328; *GasAmerica Services, Inc. v. State Department of Revenue* (1990), Ind. Tax, 552 N.E.2d 860, 862; *Emley v. Indiana Department of State Revenue* (1989), Ind. App., 536 N.E.2d 558, 560–61; *State Board of Tax Commissioners v. Vermillion County Property Owners' Association* (1986), Ind.App., 490 N.E.2d 341, and because the issue of whether a "substantial amount" of property in the township was partially or totally destroyed was not addressed below, the State Board's motion for summary judgment is DENIED.

■ The court must next determine whether the State Board's finding that the Scheid fire was not a disaster is supported by substantial evidence, "is an abuse of discretion, is in excess of statutory authority, or is arbitrary or capricious." *Bailey Seed Farms, Inc. v. State Bd. of Tax Comm'rs* (1989), Ind.Tax, 542 N.E.2d 1389, 1391. Scheid's motion for summary judgment is based upon the contention that the fire was a "disaster."

The State Board denied the petition for reassessment "[b]ecause *disaster* implies destruction of a sudden and extraordinary nature, such as caused [by] flood, tornado, explosion, and widespread fire, it does not apply to a common, daily occurrence such as the burning of a single structure." (Emphasis in original.) The State Board did not rely upon any implemented regulations defining the term disaster.

IC 6–1.1–4–11 provides in pertinent part: (a) If a substantial amount of real and personal property in a township has been partially or totally destroyed as a result of a disaster, the state board of tax commissioners shall:

(1) cause a survey to be made of the area or areas in which the property has been destroyed; and

(2) order a reassessment of the destroyed property;

The legislature did not define "disaster;" however, words and phrases should be taken in their plain, ordinary and usual sense, unless such construction is plainly repugnant to the intent of the legislature or the context of the statute. IC 1–1–4–1. "[T]he foremost objective of the rules of statutory construction is to determine and effect the true intent of the legislature." *Park 100 Dev. Co. v. Indiana Dep't of State Revenue* (1981), Ind., 429 N.E.2d 220, 222 (citing *Loza v. State* (1975), 263 Ind. 124, 325 N.E.2d 173). Furthermore, "the legislative intent as ascertained from an Act as a whole will prevail over the strict literal meaning of any word or term used therein." *Park 100,* 429 N.E.2d at 222 (citing *State v. George* (1980), 273 Ind. 26, 401 N.E.2d 680).

"Disaster" is defined as "any happening that causes great harm or damage; serious or sudden misfortune; calamity." WEBSTER'S NEW WORLD DICTIONARY 400 (2d college ed. 1984). The State Board's interpretation of "disaster" seriously limits its scope. When construing a statute, its provisions are not to be "unnecessarily narrowed or emasculated." *State ex rel. Van Buskirk v. Wayne Township, Marion County* (1981), Ind.App., 418 N.E.2d 234, 241 (citing *Evansville Vanderburgh School Corp. v. Roberts* (1979), Ind.App., 395 N.E.2d 291, 294).

A court may also consider legislation passed either before or after the statute was enacted to aid in its interpretation. *R.L. v. State* (1982), Ind.App., 437 N.E.2d 482, 484. An amendment altering a statute raises a presumption that the legislature

intended "to change the law unless it clearly appears an amendment was made only to express more clearly the original intention of the Legislature." *Indiana Dep't of State Revenue v. Cable Brazil, Inc.* (1978), 177 Ind.App. 450, 458–59, 380 N.E.2d 555, 559–60. The precursor to IC 6–1.1–4–11 was IC 6–1–26–7, which provided reassessment relief "[i]n case of flood, fire, or other disaster. . . ." In its current form, IC 6–1.-1–4–11 excludes the listed terms and only provides the broad term "disaster."

There are at least two possible interpretations of the amendment made to IC 6–1–26–7. First, the legislature possibly intended "disaster" to be defined in broad terms in order to afford relief for many types of property loss. Because IC 6–1.1–4–11 does not provide examples of the term "disaster," it can now be interpreted to encompass any destruction of property that occurs suddenly and causes great harm. Similarly, the intention behind deleting the words "flood" and "fire" could have been due to the legislature's recognition that not all floods or fires are disasters, as is the case if they do not occur suddenly or cause great harm.

Second, the amendment could be interpreted as an attempt by the legislature to prohibit relief for all losses caused by flood or fire. Undermining this interpretation, however, is the State Board's own interpretation which does not exclude reassessment relief for flood damage.

To find that the word "disaster" is intended to provide for reassessment relief only in situations of widespread fire is to misconstrue the underlying purpose of the remedial statute at issue. The court therefore holds that the term "disaster" includes the destruction of property by fire that is not necessarily "widespread." The State Board's determination that only a widespread fire constitutes a disaster under IC 6–1.1–4–11 is an abuse of discretion and is not in accordance with law.

This is not to say, however, that every fire which partially or totally destroys a substantial amount of property in the township is a disaster entitling a taxpayer to reassessment.

Accordingly, Scheid's motion for summary judgment is GRANTED. This cause is remanded to the State Board to determine whether the Scheid fire was a disaster in light of the court's opinion and for further action consistent with the same.