Michael AYLESWORTH, William Carmichael and Walter W. Campbell, the Board of Commissioners of Porter County, Indiana; Vernon Dinse, Charles Polarek, Timothy A. Montania, Ralph D. Ayers, Brian E. Gesse, Pauline Ahlgrim and Jack Klem, the County Council of Porter County, Indiana; and Dorothy Lenburg, County Auditor of Porter County, Indiana, Appellants (Defendants Below),

v.

James D. McKESSON, Appellee (Plaintiff Below).

No. 3-1280A354.

Court of Appeals of Indiana, Third District.

May 18, 1981.

Rehearing Denied July 2, 1981.

Robert A. Welsh, Harris & Welsh, Chesterton, for appellants.

Calvin K. Hubbell, Valparaiso, for appellee.

HOFFMAN, Presiding Judge.

This appeal arises out of a public lawsuit under IC 1971, 34–4–17–1 (Burns Code Ed.) brought by James D. McKesson for injunctive relief to prohibit the sale of General Obligation Bonds in the amount of $2,900,000 for the construction of a new Porter County Fairgrounds Complex.

On February 19, 1980 a petition consisting of 89 counterparts proposing the issuance of the bonds was delivered to the Board of Commissioners of Porter County, and it was given to the Porter County Auditor for the purpose of certifying the signators of the petition as owners of taxable real estate in Porter County, Indiana. On March 13, 1980 the Auditor executed her certification specifying that the petition consisted of 1,119 owners of real estate in Porter County. On March 17, 1980 the Board of Commissioners accepted the petition and certification and passed Resolution 80–7, recommending that the County Council of Porter County authorize an appropriation for the construction of the Fairgrounds Complex and finance it through the issuance of General Obligation Bonds in the amount of $2,900,000.

On April 8, 1980 the Porter County Council held a public hearing, at which time citizens were given an opportunity to speak regarding the proposal. At the conclusion of the hearing, the Porter County Council unanimously passed an Ordinance authorizing the additional appropriation and issuance of the bonds. A combined notice form was posted and published by the Auditor in the "Vidette Messenger" and "Porter County Herald" newspapers on April 17 and April 24, 1980.

On May 19, 1980 a remonstrance containing 34 counterparts was submitted to the Auditor which was against the issuance of the bonds. On May 27, 1980 additional counterparts of the remonstrance petition were submitted to the Auditor. On June 6, 1980 the Auditor certified that the remonstrance petition submitted on May 19, 1980 contained 896 signators who were owners of real property in Porter County. The Auditor refused certification of the counterparts filed on May 27, 1980, for the reason that they were not timely filed pursuant to IC 1971, 6–1.1–20–4 (Burns 1978 Repl.).

At the meeting of the Porter County Council on June 24, 1980, the Auditor's certification of the remonstrance petition was presented to the Council. At that meeting, McKesson filed verified objections to the Auditor's certification of both sets of petitions. The Council unanimously passed Resolution 80–5 stating that the certification was received and accepted, and declaring the remonstrance to be insufficient to prevent further proceedings toward the issuance of the bonds.

On June 13, 1980 the Auditor's certificate regarding the additional appropriation of $2,900,000 was sent to the State Board of Tax Commissioners along with the petition of the Auditor requesting approval of the issuance of Porter County's "Building Bonds of 1980" in the amount of $2,900,000.

A hearing was held by the State Board of Tax Commissioners for the approval of these requests. On July 8, 1980 the additional appropriation was formally approved by Order No. 80641633A and the issuance of Building Bonds was approved by Order No. 80641633. On September 2 and 9, 1980 the Board of Commissioners of Porter County published notice that a sale of the bonds would take place on September 29, 1980.

On September 12, 1980 McKesson filed suit seeking injunctive relief to prevent the sale of the bonds. On September 26, 1980 the Porter Superior Court, by the Honorable Bruce W. Douglas, issued a temporary injunction blocking the bond sale and ordered the Auditor to perform a recount of signatures on the proponents' petition and upon all counterparts of the remonstrance. On October 16, 1980 the rechecking process was completed by the Auditor and the result was filed with the court. As a result of the rechecking, the number of names the Auditor found to be certifiable on the proponents' petition amounted to 1,354 and the number of certifiable names on the petition of the remonstrators amounted to 1,087.

On October 28, 1980 the Honorable Bruce W. Douglas issued an order permanently enjoining the issuance of the bonds for the construction of the Porter County Fairgrounds Complex and any further proceedings thereon until May 27, 1981. Judge Douglas based his order on his findings that no evidence was presented as to whether or not notice was posted in three public places, as required by law, and that an additional 267 signatures certifiable on the remonstrance counterparts filed May 27, 1980 plus 40 certifiable signatures from remonstrance counterparts the Auditor had disqualified, should, in fact, be added to the sum of remonstrance signators bringing the total to 1,394.

The issues raised in this appeal are as follows: [1]

(1) whether the trial court erred in finding that notice had not been posted pursuant to law by the Auditor;

(2) whether the trial court erred in finding that the counterparts to the remonstrance petition filed on May 27, 1980, were timely filed and the certifiable names contained therein should be counted toward the total; and

(3) whether the trial court erred in finding that 40 certifiable signatures from remonstrance counterparts which had been disqualified by the Auditor should be counted toward the total.

We find that the trial court did err in each issue presented on appeal and the order of the trial court granting the permanent injunction should be reversed.

In his order of October 28, 1980 Judge Douglas found as follows:

"That Indiana Code 6–1.1–20–4 also requeres [sic] that the Notice be posted in three public places in the political sub-division which decides to issue the bonds. There has been no evidence submitted to the Court to show that this Notice was posted, nor to show, if it was posted, when it was posted. Owners of property that may wish to remonstrate also have thirty (30) days to remonstrate from the time the Notice was posted. There being no evidence in this case concerning the posting, the Court must rule against the Defendants on this particular point for only the Defendants would know if and when the Notice was posted.

"For these two reasons, either one of which would be sufficient, the Court does now consider the remonstrating petitions filed May 27, 1980, as timely filed."

It is true that no evidence was presented by either party tending to prove that notice was posted in three public places. No evidence was presented concerning posting for the simple reason that posting was never at issue in this case.

The complaint filed by McKesson on September 12, 1980, stated as follows:

"8. That Notices of the Determination to Issue Bonds were prepared, *posted* and published which were intended to give

---

notice to both those who might object to such action and to those who might wish to remonstrate against such action, which notices were published as a single advertisement in the *Vidette Messenger* and *The Porter County Herald*, said publications being on April 17, 1980, and April 24, 1980." (Emphasis added.)

McKesson again stated in his affidavit in support of complaint for injunction:

"13. That the notice given was *posted* and prepared two (2) times...." (Emphasis added.)

 The defendants in their answer to the complaint fully admitted rhetorical paragraph 8 of the complaint. Where a fact has been expressly admitted by the pleadings, it need not be proven. *O'Neal v. Deveny* (1963), 135 Ind.App. 446, 194 N.E.2d 413; *Walters v. Cantner* (1945), 223 Ind. 263, 60 N.E.2d 138. In *Rimer v. Stanz* (1951), 122 Ind.App. 178, at 185, 101 N.E.2d 428, at 431, this Court said:

"Admissions made in a pleading are denominated solemn admissions or admissions *in judicio,* and are not required to be supported by evidence. Such admissions are taken as true against the party making them without further controversy.
"In fact, admissions in the pleadings cannot be either proved or disproved on the trial, but must be accepted for whatever they amount to in legal effect, without reference to any other evidence that may be adduced."

 Even if the issue of posting had been disputed at trial the trial court, in its finding, placed the burden of proof upon the wrong party. The burden of proof would have been upon McKesson to show that the requisite posting was not done. *Kinzel et al. v. Rettinger et al.* (1972), 151 Ind.App. 119, 227 N.E.2d 913. In the present case, McKesson presented no evidence at trial pertaining to the posting of notice, or lack thereof.

 Therefore, it is contrary to law for the trial court to place the burden of proof regarding posting on the defendants. It is also contrary to law for the trial court to base its order for a permanent injunction on the finding that no evidence was presented at trial on an issue which was admitted in the pleadings and not in dispute. On this issue, the trial court is reversed.

Judge Douglas also found that the remonstrance counterparts filed on May 27, 1980, were timely filed and should have been certified by the Auditor.

The combined notice form was published first on April 17, 1980 and again on April 24, 1980. On May 27, 1980 the attempt was made to submit additional counterparts of the remonstrance petition. The Auditor refused certification of those counterparts for the reason that they were not filed within 30 days of the first publication date. In so doing, the Auditor was correct.

The notice which was published, made no mention of a 30-day-time limitation for filing remonstrances. Rather, it stated:

"Remonstrances against the issuance of said bonds may be filed with the County Auditor by owners of taxable real estate in said County in the manner and within the time provided by I.C. 6–1.1–20–[4]."

Therefore, any taxpayer would have to refer to the statute to find the 30-day-time limitation for filing his remonstrance. That same statute explicitly says that only one notice need be published.

The published notice also advises taxpayers that objections may be made pursuant to IC 1971, 6–1.1–20–5. Again, they would have to refer to the appropriate statute and that statute would put them on notice that publication must occur twice.

McKesson was well aware of the dual purpose of the notice since he admits in paragraph 8 of his complaint that the notices published were intended to give notice to both those who might object to the action and to those who might wish to remonstrate against the action. Therefore he must have been aware of the dual publication. Yet, he was put on notice that the remonstrance provision of the statute required only one publication, and should have known the 30 days would run from the date of the required publication.

■ In this case, the Auditor published more notice than was necessary for compliance with IC 1971, 6–1.1–20–4, but that does not change the tolling of the filing limitation. As this Court has expressed before, there is a great need for finality. *Manner of Annexation, etc.* (1978), Ind. App., 383 N.E.2d 481. If this Court were to decide otherwise, the process could be continued *ad infinitum.*

■ The trial court's ruling being in error, the 267 certified signatures on the May 27 remonstrating petitions, should be deducted from the total, causing the remonstrance to be insufficient.

■ Upon finding that his ruling allowing the 267 certified signatures on the May 27 remonstrance counterparts to be added to the total, brought the total to 1,354, a sum which tied the number of qualified signatures in favor of the bond issue, Judge Douglas proceeded to go even further with his order. The Porter County Auditor refused to certify the names on page 2 of Remonstrance Counterpart 14, pages 1 and 2 of Remonstrance Counterpart 19 and Remonstrance Counterpart 32A. Yet, the trial court ordered the certifiable names contained in those counterparts to be added to the sum, bringing the total to 1,394, and defeating the petition of the proponents.

McKesson alleges that this Court is at a disadvantage due to the fact that this appeal is based upon a partial transcript. However, this Court finds itself at no disadvantage, since we have before us the same evidence the Auditor had before her in making her certification decisions.

In his order of September 26, 1980, the trial judge found that the standards used by the Auditor in carrying out her duty of certification were sufficient. He then ordered her to re-evaluate and recertify both the petitions for the bond issue and the remonstrances. At that time he gave her criteria to follow in completing the task. Yet, in his order of October 28, 1980, he took it upon himself to change her certifica-

tion results. The law of restricted judicial interference seems well and properly settled, yet it was not followed in the case at hand. *Public Service Comm. v. Ind. Bell Tel. Co.* (1953), 232 Ind. 332, 112 N.E.2d 751.

Page 2 of Remonstrance Counterpart 14 was contained within Remonstrance Counterpart 9. However, the verification affidavit attached to Counterpart 9 stated that it was to verify Counterpart 9 and made no mention of verifying page 2 of Counterpart 14.

The same situation occurred with respect to Remonstrance Counterpart 13. Pages 1 and 2 of Counterpart 19 were attached to page 1 of Counterpart 13. However, the attached verification affidavit stated that it was to verify Counterpart 13 and made no mention of verifying pages 1 and 2 of Counterpart 19.

IC 1971, 6–1.1–20–3 requires that each petition be "verified under oath." "Verification" is defined in Indiana case law as including both the actual swearing to the truth of the statements by the subscriber and also the certification thereto by the notary. *Gossard v. Vawter* (1939), 215 Ind. 581, 21 N.E.2d 416.

It is clear that since no verification affidavit referred to page 2 of Counterpart 14 or pages 1 and 2 of Counterpart 19, these counterparts were not properly verified pursuant to the statute and the names on those pages should not have been counted toward the total.

The Auditor also refused to certify the names on Remonstrance Counterpart 32,[2] on the grounds that they were not properly verified. The trial court admitted these names, saying that the document did not need to be notarized.

As discussed previously, the statute required the petitions to be verified. In Indiana, this means both the actual swearing to the truth of the statements by the subscriber and also the certification by a notary or other officer authorized by law to administer oaths. The actual jurat on Counterpart

---

**2.** This counterpart is referred to as 32A in the order and the briefs filed. However, the record shows it as 32, with the unexplained notation of (32A) in the lower right hand corner.

32 bears no signature identifying the notary public. The jurat on the affidavit in question was insufficient for its purpose. *Gossard, supra; Pappas v. State* (1979), Ind. App., 386 N.E.2d 718.

Therefore, the trial court's finding was contrary to law and the Auditor was correct in denying the certification of the names contained in Remonstrance Counterpart 32, since they were not properly verified.

The 40 names which Judge Douglas added to the total of the remonstrators, were added improperly and should be deleted. Therefore, assuming for the sake of argument, he had been correct in ruling that the counterparts filed on May 27, 1980 were timely filed, which they were not, the remonstrance still fails. For such a result would bring both totals to 1,354 names; a tie. IC 1971, 6–1.1–20–4 requires a greater number of owners of taxable real property to sign a remonstrance in order to defeat the proposal. In this case, they would be one signature short.

Reversible error being present, the judgment of the trial court is reversed and this cause is remanded with instructions to enter judgment for the defendants-appellants.

Reversed and remanded.

GARRARD, J., concurs.

STATON, J., concurs in result with opinion.

STATON, Judge, concurring in result.

I concur in the majority's disposition of Issue 1 (public posting of notice of the petition for bond issuance) and Issue 3 (remonstrative petitions disqualified by the Porter County Auditor). However, I am unable to agree with the majority's resolution of Issue 2 as it relates to the timeliness of the remonstrative petitions filed on May 27, 1980. I conclude that the trial court properly determined the 30-day period for filing remonstrative petitions. The period began to run for filing these petitions on April 24, 1980, when notice of the petition

for the bond issuance was republished. Thus, the Porter County Auditor should not have disqualified the remonstrative petitions filed on May 27, 1980.[1]

As stated by the majority, the appropriate body of a political subdivision must give notice by publication of a petition for bond issuance filed by taxpayers under IC 1976, 6–1.1–20–4(a) (Burns Code Ed.). If the political subdivision decides to issue the bonds, it must give notice by publication of its decision under IC 1976, 6–1.1–20–5(a) (Burns Code Ed.). Under IC 6–1.1–20–4(a), publication of notice must be effected "one ▆ time" in the manner prescribed in IC 6–1.1–20–4(c). Under IC 6–1.1–20–5(a), notice must be published "once a week for two ▆ weeks" also in the manner prescribed in IC 6–1.1–20–4(c). Thus, the political subdivision must give *two* types of notices when a petition for bond issuance is filed, and it decides to issue the bonds. This dual publication of notice requirement is the subject of Issue 2 of this appeal.

The confusion over the timeliness of the May 27, 1980 remonstrative petitions is a direct result of the failure of the Board of County Commissioners and the Porter County Auditor (County) to strictly adhere to the notice provisions of IC 6–1.1–20–4(a). The error was created by the County's use of what has been referred to as a "combined notice form." In an amicus curiae brief filed by the Porter County Agricultural Society (Fair Board), this Court is informed that the use of a "combined notice form" is a well-established practice used to satisfy the dual publication of notice requirement of IC 6–1.1–20–4(a) and IC 6–1.1–20–5(a). The Fair Board provided the following summary of the use of the "combined notice form":

"In an effort to satisfy this dual notice requirement, law firms serving as bond counsel to governmental bodies issuing general obligation bonds, began utilizing a document commonly known as a 'combined notice form.' The combined notice form, which has remained virtually un-

---

1. The trial court extended the thirty-day filing period by three days since the thirtieth day fell on a weekend that was followed by the Memorial Day holiday.

changed since 1937, consists of three paragraphs. The first paragraph informs the public that a petition has been filed by more than 50 owners of taxable real estate requesting the issuance of bonds for a particular purpose, not to exceed a specified amount. The first paragraph further gives notice that remonstrances against the issuance of bonds may be filed with the county auditor in the manner and within the time provided by Ind. Code § 6–1.1–20–4 (formerly Burns Ann. Stat. § 64–1910).

"The second paragraph of the combined form notifies the public that the governmental entity has determined to issue bonds in a specified amount for the purpose stated in the first paragraph. It further contains a statement to the effect that objections to the issuance of bonds may be made pursuant to Ind.Code § 6–1.1–20–5 (formerly Burns Ann.Stat. § 64–1915).

"The third paragraph merely sets out figures indicating that the proposed issuance will not cause the entity to exceed the legal limit on its bonded indebtedness.

"The combined notice form is used for both posting and publishing. That is, the notice is posted in three public places and is also published in the necessary newspapers. Although the substance of the first paragraph need only be published once, the entire combined notice is reprinted in the newspapers on two consecutive weeks because the statutory provision to which the second paragraph is directed must be published on two occasions. It is precisely this practice of publishing a combined notice form on two consecutive weeks which the trial court in the present case has suddenly and erroneously ruled invalid, notwithstanding the fact that such has been the practice continuously throughout Indiana since 1937."

Notwithstanding the Fair Board's observation that the "combined notice form" has become entrenched as an essential tool in the practice of Indiana bond law, its use must be discontinued. The "combined notice form" used by the County in the present case resulted in the County's failure to strictly adhere to the statutory directives of IC 6–1.1–20–4(a), which requires the publication of notice only *once*. The republication of notice on April 24, 1980, could have had the effect of misleading those taxpayers who first learned of the petition for bond issuance through the second notice. The April 24 notice, which was identical to that first published on April 17, 1980, appeared in two Porter County newspapers as follows:

"NOTICE OF PETITION FOR AND DETERMINATION TO ISSUE BONDS

"Owners of the taxable real estate in Porter County, Indiana, are hereby notified that a petition has been filed by more than fifty owners of taxable real estate in said County requesting the issuance of bonds of the County in an amount not exceeding $2,900,000.00 for the purpose of procuring funds to be applied on the cost of construction of a new Porter County Fairgrounds Complex on property currently owned and used by Porter County located at the intersection of State Road 49 and Division Road, Washington Township, Porter County, Indiana, together with the incidental expenses to be incurred in connection therewith and on account of the issuance of bonds therefor. *Remonstrances against the issuance of said bonds may be filed with the County Auditor by owners of taxable real estate in said County in the manner and within the time provided by I.C. 6–1.1–20–4.*

"The taxpayers of Porter County are further notified that the Board of Commissioners and County Council of said County have determined to issue bonds of the County in the amount of $2,900,000.00 for the purpose of procuring funds to be used as above stated. Said bonds are to bear interest at a rate or rates not exceeding 10% per annum, (the exact rate or rates to be determined by bidding), and are to be payable serially over a period of approximately 10 years from the date of issuance thereof unless the

same are made redeemable prior to maturity. Objections to the issuance of said bonds may be made under the provisions of I.C. 6–1.1–20–5 by ten or more taxpayers filing a petition in the office of the Auditor of Porter County in the manner and within the time prescribed by law, which petition, if any, will be heard and considered by the State Board of Tax Commissioners in the manner provided by law.

"The net assessed valuation of taxable property in Porter County, as shown by the assessment made in the year 1978 for state and county taxes collectible in the year 1979, is in the amount of $487,493,-670.00, and the outstanding indebtedness of the County, exclusive of the above mentioned bonds, is in the amount of $2,725,000.00.

"Dated this 11th day of April, 1980.

Dorothy M. Lenburg,

Auditor of Porter County

by E. Chester,

Adm. Asst."

(emphasis added, parentheses original)

A taxpayer who wished to file a remonstrative petition after reading the April 24 notice would have referred to IC 6–1.1–20–4(a) as directed by the italicized section of the notice. Upon examining the statute, the taxpayer would have discovered that he or she had to file a remonstrative petition "[w]ithin thirty [30] days after the notice is given." The objecting taxpayer would have also discovered that the County was required to give notice of the bond petition only "one [1] time."

On the other hand, the taxpayer who had no knowledge of the first notice could have reasonably inferred from the second notice that he or she had thirty days in which to file a remonstrative petition. It would be inherently unfair for the thirty-day period to commence from the date of the first publication of notice because the taxpayer who had no knowledge of the first publication of notice would be lulled into believing that he or she had a full thirty days in which to respond. The political subdivision's affirmative act in republishing a notice that should have been published only once caused the taxpayer to fail to file a remonstrative petition within thirty days of the first publication of notice.

Indiana law on an entity's duty to abide by the notice provisions of a statute is clear:

"When a formal notice is required to be given, it should give the necessary information, and if a statute or rule of court indicates the terms to be used in the notice, a substantial compliance therewith is essential.

"Mere informalities, irregularities, or immaterial defects do not vitiate notices as long as they give the necessary information *and do not mislead,* and defects in some notices may be waived." (footnotes omitted, emphasis added)

22 I.L.E. *Notice* § 5, at 149–50 (1959). The County's unnecessary republication of notice could have misled taxpayers into a false awareness of the time limitation in which to file remonstrative petitions. The County's error transcends the classification of its act as a "mere informality, irregularity, or immaterial defect." Rather, it ventures into the sphere of a fatal defect that has the propensity to mislead. The provisions of the statute relating to the publication of notice must be followed. It has been observed:

"Publication of notices may be authorized by statute, and the statutes providing in what newspapers legal notices must be published must be followed. A notice, advertisement, or list, authorized or required to be published by law, must be published with the frequency and for the period prescribed by law." (footnotes omitted)

22 I.L.E. *Notice* § 6, at 151 (1959); *see also,* 66 C.J.S. *Notice* § 18g, at 667 (1950). The rules of construction require if "there is any ambiguity in the terms of a notice, rendering its meaning doubtful, the doubt must be resolved against the person giving the notice." 66 C.J.S. *Notice* § 19a, at 668 (1950). Insofar as the reference to IC 6–1.-

1-20-4(a) in the April 24 notice was misleading and created an ambiguity as to the time limitation in which a taxpayer could file a remonstrative petition, the ambiguity must be construed against the County. The trial court properly determined the thirty-day time limitation commenced from the date of the second publication of notice.

It may not appear at first blush that there is anything inherently unfair about exceeding the notice requirements of a particular statute. One may rhetorically ask, "Can too much legal notice ever be given?" An analysis of the factual situation presented in this appeal answers the question in the affirmative. Notice above and beyond that required by statute becomes improper when it has the effect of misleading those to whom notice is given.

It may also be asserted that the unnecessary republication of notice actually conferred a benefit upon those taxpayers who had no knowledge of the first publication of notice. Those taxpayers are in effect given a "second chance" to remonstrate. However, when notice is published only once as required by statute and taxpayers do not see the notice, it is through no fault of the County that the taxpayers missed their opportunity to remonstrate. The situation changes, however, when the County, through its own failure to abide by a statute, misleads taxpayers into believing that they have a full thirty days in which to file remonstrative petitions. The taxpayers' omission is directly attributable to the County's misfeasance.

The majority's vehement insistence upon "a great need for finality" and its ominous prediction of an *ad infinitum* filing of remonstrative petitions are unfounded if the political subdivision in question strictly adheres to the notice provisions prescribed by statute. The specter of never-ending remonstrances would be defeated soundly if political subdivisions would deviate from the well-established "tradition" of using "combined notice forms" and cast the forms

aside. Bond counsel should delete the first paragraph of the "combined notice form" when notice is published the second week to satisfy the requirements of IC 6-1.1-20-5(a).

I conclude the trial court did not err in finding the May 27, 1980, remonstrative petitions were timely filed and should have been accepted by the Porter County Auditor. However, as observed by the majority, the result of this appeal would not be altered if the May 27 petitions were counted. The remonstrators would not have a "greater number of owners of real property subject to taxation" in opposition to the issuance of the bonds, as required by IC 6-1.1-20-4(b). Thus, I concur in the result reached by the majority.

I reiterate my concurrence in the majority's disposition of Issue 3 as it relates to the Porter County Auditor's disqualification of three remonstrative petitions. It is clear that page two of Counterpart 14 and pages one and two of Counterpart 19 do not include the proper verification affidavits required by IC 6-1.1-20-4(a). However, the dispute over the validity of Counterpart 32 (or 32A, whichever it is) may be resolved in a more effective manner. Under IC 6-1.1-20-4(a), remonstrative petitions must be "verified." The majority concludes Counterpart 32 was not verified properly because it bore no signature identifying the notary. However, it appears that the notary's signature was made on the line above the line reserved for the notary's signature. The affidavit otherwise contains all the essential information found on notarized documents, such as the notary's seal, the notary's county of residence, the expiration of the notary's commission, and the date when the affidavit was signed before the notary.[2] I would view the affidavit as being properly notarized.

Counterpart 32 should be disqualified based on the affiant's failure to comply with Trial Rule 11(B), which provides:

---

**2.** The form of notarization is established by statute. *See,* IC 1976, 33-16-2-9 (Burns Code Ed., 1980 Supp.). However, the statute does not affect the validity of any documents notarized before July 1, 1982. IC 33-16-2-9(b).

"(B) Verification by affirmation or representation. When in connection with any civil or special statutory proceeding it is required that any pleading, motion, petition, supporting affidavit, or other document of any kind, be verified, or that an oath be taken, it shall be sufficient if the subscriber simply affirms the truth of the matter to be verified by an affirmation or representation in substantially the following language:

'I (we) affirm, under the penalties for perjury, that the foregoing representation(s) is (are) true.

(Signed)_____'

"Any person who falsifies an affirmation or representation of fact shall be subject to the same penalties as are prescribed by law for the making of a false affidavit." (parentheses original)

The Indiana Supreme Court, relying on TR. 11(B), recently invalidated an affidavit in which the affiant failed to affirm the truth of the matter to be verified. *State ex rel. Hodges v. Kosciusko Circuit Court* (1980), Ind., 402 N.E.2d 1231. The Court stated:

"While petitioners swore that they made certain statements, they did not swear that the statements they made were true."

402 N.E.2d at 1232. The verification affidavit attached to Counterpart 32 contained the same defect found in the affidavit in *Hodges.* There is no affirmation of the truth of the affidavit's contents. Therefore, Counterpart 32 was properly disqualified.