622 N.E.2d 248 (1993)
William A. MILLER and Taxpayers for Alternate Landfill Location, Petitioners,
v.
GIBSON COUNTY SOLID WASTE MANAGEMENT DISTRICT, Being Warner E. Clem, Roger T. Myers, R. Allen Harmon, Jr., Gary Bise, George Taylor, Hubert O. Crawford, and Hazel Pauley and State Board of Tax Commissioners, Being C. Kurt Zorn, Gordon E. McIntyre, and Wanda Watts, Respondents.
No. 82T10-9303-TA-00013.
Tax Court of Indiana.
October 13, 1993.
*250 Terry A. White, Olsen Niederhaus, Labhart & White, Evansville, for petitioners.
Karl R. Sturbaum, George T. Patton, Jr., Bose McKinney & Evans, Indianapolis, for respondents.
FISHER, Judge.
This is an appeal from a final determination of the Respondent, the State Board of Tax Commissioners (the State Board), approving a proposed $2,100,000 bond issue to underwrite a new landfill in Gibson county. The Petitioners, William Miller and Taxpayers for Alternate Landfill Location (collectively, TALL), disagreed with the proposed issue and brought this appeal, naming the Gibson County Solid Waste Management District (the District), and the State Board, as Respondents in the action.

ISSUES
This case has been marked by a high degree of acrimony since its inception, which in turn has caused the parties difficulty in defining and developing the relevant issues. After reviewing the parties' several briefs and motions, therefore, the court consolidates and rephrases the issues for review as the following:
I. Whether the court has subject matter jurisdiction over the appeal.
II. Whether the court can provide relief on TALL's claim under the Open Door Law, IND. CODE 5-14-1.5.
III. Whether evidence presented to the Local Government Tax Control Board constitutes the sole evidence presented to the State Board as a matter of law.
IV. Whether the District complied with the procedural requirements of IND. CODE 6-1.1-20 in developing the proposed bond issue.
V. Whether TALL met its burden under IND. CODE 6-1.1-20-5 to show the bond issue is "unnecessary or excessive."
VI. Whether the State Board abused its discretion or exceeded its statutory authority by amending its final order.

BACKGROUND[1]
The basic facts underlying this litigation are not in dispute. In the fall of 1989, the Gibson County Commissioners learned the county-owned landfill would reach capacity in the mid 1990s. The Commissioners considered several options, including expansion, use of an out-of-county landfill, and construction of a new landfill. With this latter objective in mind, they hired engineers, who surveyed the county to find an acceptable site for a new landfill. In late 1990, the engineers began investigating an old coal mine outside Oakland City in the eastern area of the county and eventually determined the site to be geologically suitable for a landfill. The site is surrounded by large trees, sits close to existing roads, and is separated by at least 200 yards from the nearest residence. On the other hand, the site is within a mile of eighty-five water wells, that serve surrounding rural homes and the needs of the entire town of Francisco.
By early July of 1991, Gibson County had been authorized to act as a county solid *251 waste management district under IND. CODE 13-9.5-2. The District determined that constructing a new landfill at the Oakland City site was the best course of action and decided to issue $2,100,000 in bonds to finance that construction.
Petitioner Miller, who lives less than a mile from the Oakland City site, disagreed with the need for a new landfill at the site. Along with several other interested landowners, he formed TALL and began the protests that eventually culminated in this appeal. The additional procedural facts critical to each issue will be provided as necessary.

DISCUSSION AND DECISION

I

SUBJECT MATTER JURISDICTION
At the close of trial on August 6, the Respondents moved to dismiss TALL's appeal for want of subject matter jurisdiction. Specifically, they claim TALL's noncompliance with the requirements of IND. CODE 6-1.1-15-5 (Section 5) is fatal to TALL's case. Section 5 is not dispositive in this case, and the court therefore denies the motion.
In appeals from the State Board, Section 5 generally prescribes the procedural steps petitioners must follow.
(a) Within fifteen (15) days after the state board of tax commissioners gives notice of its final determination under section 4 of this chapter, the county executive may, upon the request of the county assessor, request a rehearing before the board. The county assessor must notify, by mail, the taxpayer and the appropriate township assessor of the request. The board may conduct a rehearing and affirm or modify its final determination, giving the same notices after the rehearing as are required by section 4 of this chapter.
(b) A person may appeal the state board of tax commissioners' final determination regarding the assessment of that person's tangible property. The appeal shall be taken to the tax court... .
(c) If a person desires to initiate an appeal of the state board of tax commissioners' final determination, the person shall:
(1) file a written notice with the state board of tax commissioners informing the board of his intention to appeal;
(2) file a complaint in the tax court; and
(3) serve the attorney general and the county assessor with a copy of the complaint.
(d) To initiate an appeal under this section, a person must take the action required by subsection (c) within:
(1) forty-five (45) days after the state board of tax commissioners gives the person notice of its final determination under:

(A) IC 6-1.1-14-11; or
(B) section 4 of this chapter;
unless a rehearing is conducted under subsection (a); or
(2) thirty (30) days after the board gives the person notice under subsection (a) of its final determination, if a rehearing is conducted under subsection (a).
.....
Section 5 (emphasis added). It is undisputed TALL did not comply with all the requirements stated in the statute. In those cases falling within Section 5's penumbra, failure to comply with the statute is a subject matter jurisdictional failure. "If a taxpayer fails to comply with any statutory requirement for the initiation of an original tax appeal, the tax court does not have jurisdiction to hear the appeal." IND. CODE 33-3-5-11(a); Sherry Designs, Inc. v. State Bd. of Tax Comm'rs (1992), Ind. Tax, 589 N.E.2d 285, 286. As the emphasized language quoted above demonstrates, however, Section 5 is not universal in scope.
Subsection (b) of Section 5 authorizes taxpayers to appeal a State Board final determination "regarding the assessment of that person's tangible property." The present appeal, of course, is not an appeal *252 of a tangible property assessment. Rather, it is an appeal from a final determination approving a proposed bond issue under the auspices of IC 6-1.1-20.
Under subsection (d), which sets the time limits for filing an appeal, the limitations period in cases without rehearings starts from the date of notice of the State Board's final determination under either IC 6-1.1-14-11 or IC 6-1.1-15-4. IC 6-1.1-14-11 governs the notice requirements for State Board review of assessments and reassessments under IND. CODE 6-1.1-14-10. This latter statute grants the State Board authority to "review the assessment or reassessment of any tangible property and ... reassess the property." IC 6-1.1-14-10 (emphasis added). Similarly, section 4 of IC 6-1.1-15 controls State Board review "of a county board of review's action with respect to the assessment of [a] taxpayer's tangible property." IND. CODE 6-1.1-15-3(a) (emphasis added). Like subsection (b), then, subsection (d) controls only appeals from State Board final determinations assessing a taxpayer's tangible property. Once again, the present appeal has no relation to any assessment of tangible property.
Notwithstanding the unmistakable language of subsections (b) and (d), the District and the State Board claim Section 5 controls because subsection (c) makes no reference to a taxpayer's tangible property or to any other statute that does. This reasoning is untenable. Statutes must be read as a whole: "[t]he intent of the legislature in drafting a statute cannot be determined from viewing words on a selective basis out of context from the remainder of the statute." Area Interstate Trucking, Inc. v. Indiana Dep't. of Revenue (1992), Ind.Tax, 605 N.E.2d 272, 274, cert. denied, ___ U.S. ___, 114 S.Ct. 183, ___ L.Ed.2d ___ (citing In re Estate of Cassner (1975), 163 Ind. App. 588, 592-93, 325 N.E.2d 487, 490). Rather, courts must construe statutes within the context of the entire act of which they are a part, Harlan Sprague Dawley, Inc. v. Indiana Dep't of State Revenue (1992), Ind.Tax, 605 N.E.2d 1222, 1225 (citing Guinn v. Light (1990), Ind., 558 N.E.2d 821, 823), striving foremost to ascertain and give effect to the true intent of the legislature. Johnson County Farm Bureau Coop. Ass'n v. Indiana Dep't of State Revenue (1991), Ind.Tax, 568 N.E.2d 578, 580, aff'd (1992), Ind., 585 N.E.2d 1336, (citing Scheid v. State Bd. of Tax Comm'rs (1990), Ind.Tax, 560 N.E.2d 1283, 1286).
Subsection (c) is a part of a larger whole, not only of section 5, but of chapter 15 of IC 6-1.1, as well. The legislature's manifest intent, repeated throughout chapter 15, is to establish a system for review of assessments of tangible property. Like the rest of Section 5, subsection (c) applies only to those appeals involving tangible property assessments. To hold otherwise would divorce subsection (c) from its proper context and require the court to ignore all the cited rules of statutory construction. Even worse, without any legislative basis, it would create procedural roadblocks of jurisdictional significance.
The case at bar does not involve an appeal of a tangible property assessment. Section 5 is therefore inapplicable, and TALL's failure to comply with its requirements has no subject matter jurisdictional effect. Next, the court must determine whether subject matter jurisdiction exists outside Section 5.
This "court has exclusive jurisdiction over any case that arises under the tax laws of this state and that is an initial appeal of a final determination" of the State Board or the Indiana Department of State Revenue. IND. CODE 33-3-5-2(a) (emphasis added). These cases are denominated as "original tax appeals." IC 33-3-5-2(c). The "court does not have jurisdiction over a case unless ... the case is an original tax appeal," or jurisdiction has been otherwise specifically assigned by statute. Id. The court interprets the "arises under" language of IC 33-3-5-2(a) and its entire jurisdictional mandate broadly. Harlan Sprague Dawley, Inc. v. Indiana Dep't. of State Revenue (1991), Ind.Tax, 583 N.E.2d 214, 218-19.
*253 The present case is an appeal from the State Board's final determination, entered under IND. CODE 6-1.1-20-6, approving the District's proposed bond issue. It is, of course, beyond dispute that IC 6-1.1-20-6, and indeed all of IC 6-1.1-20 are Indiana tax laws under which this case arises within the meaning of IC 33-3-5-2(a). It is also beyond dispute that the case is an initial appeal of a final determination of the State Board. The State Board issued its amended order, and TALL filed its appeal. The case therefore falls within the jurisdictional mandate of IC 33-3-5-2.
Unlike the tangible property assessment statutes, the bonding statutes do not provide a procedural path for appeal. Nowhere in IC 6-1.1-20 is there any indication of the appeal rights or remedies available to a party aggrieved by a State Board bonding decision. That absence, however, does not mean the court lacks jurisdiction. "A taxpayer who wishes to initiate an original tax appeal must file a petition in the tax court to set aside the final determination of the department of state revenue or the state board of tax commissioners." IC XX-X-X-XX(a). The State Board's action on the proposed bond issue was a final determination. See IC 6-1.1-20-6(b).[2] Following this final determination, TALL filed its original tax appeal under IC XX-X-X-XX(a).
Given the inapplicability of Section 5 and the absence of any other specifically controlling statute, TALL's compliance with the requirements of IC XX-X-X-XX(a) alone is sufficient to vest the court with subject matter jurisdiction. "[I]n Indiana, there is a constitutional right to review of administrative actions." State ex rel. State Bd. of Tax Comm'rs, 271 Ind. at 378, 392 N.E.2d at 1165 (citing Warren v. Indiana Telephone Co. (1940), 217 Ind. 93, 26 N.E.2d 399).[3] The court has subject matter jurisdiction.

II

OPEN DOOR LAW
One element of TALL's appeal is a claim under the Open Door Law.[4] The District is a public agency subject to the Open Door Law. IND. CODE 5-14-1.5-2(a)(2). Accordingly, it must comply with the notice requirements of IND. CODE 5-14-1.5-5 to hold its meetings. TALL claims the District did not comply and therefore seeks to void the District's actions and prevent the issuance of the bonds. See IND. CODE 5-14-1.5-7.
The parties have expended great effort haranguing over this question, and the briefing has been less than exemplary on both sides. Indeed, the parties have ignored the dispositive issue.[5] The State *254 Board, like the District, is a public agency within the meaning of the Open Door Law. IC 5-14-1.5-2(a)(1). It is therefore subject to the Open Door Law.[6] The parties, however, have assumed the State Board is a forum to remedy alleged Open Door Law violations of other public agencies. This is simply not the case. The State Board's authority is defined by statute.
Sec. 14. The state board of tax commissioners:
(1) shall see that the property taxes due this state are collected;
(2) shall see that the penalties prescribed under this article are enforced;
(3) shall investigate the property tax laws and systems of other states and countries; and
(4) may recommend changes in this state's property tax laws to the general assembly.
IND. CODE 6-1.1-30-14. This is a broad mandate, which admittedly gives the State Board substantial authority over various local governmental entities. See, e.g., IND. CODE 6-1.1-4-13.6 (State Board authority over county land valuation commissions, and county and township assessors in establishing land values); 6-1.1-14 (State Board authority over county officials' tangible property assessments); 6-1.1-15-1(d) (State Board duty to prescribe forms for township assessors' responses to appeals); 6-1.1-16-2 (State Board review authority over township assessors' appeals of county board of review actions). See also Wirth v. State Bd. of Tax Commissioners (1993), Ind.Tax, 613 N.E.2d 874, 876 (court affords State Board great discretion when acting within the scope of its authority). It is not broad enough, however, to give the State Board authority to provide relief for the alleged Open Door Law violations of the agencies answerable to it.
Under the Open Door Law, "[a]n action may be filed by any person in any court of competent jurisdiction to" remedy Open Door Law violations. IC 5-14-1.5-7(a) (emphasis added). Other subsections of IC 5-14-1.5-7 either require or allow "a court" to take certain action. IC 5-14-1.5-7(c), (d), (e), and (f). Nowhere within the Open Door Law is there provision for any administrative review. IC 5-14-1.5-7 plainly allows only courts to provide relief for Open Door Law violations, and the State Board is of course not a court. Consequently, the State Board's assertion that TALL waived its Open Door Law claim by failing to raise it properly at the administrative level is misplaced. "If administrative procedures are incapable of `answering the question presented' by a party's claim," there is no need to present the claim at the administrative level. Rambo v. Cohen (1992), Ind. App., 587 N.E.2d 140, 144, trans. denied (quoting Indiana Dep't. of Public Welfare v. Chair Lance Service, Inc. (1988), Ind., 523 N.E.2d 1373, 1379). Exhaustion of administrative remedies is not required "[w]hen the character of the question presented is beyond the pale of the agency's competency, expertise, and authority." Id. (citing Wilson v. Board of Indiana Employment Sec. Div. (1979), 270 Ind. 302, 385 N.E.2d 438, cert. denied (1979), 444 U.S. 874, 100 S.Ct. 155, 62 L.Ed.2d 101). By the same token, however, *255 TALL cannot find relief in the present forum.
This court is one of limited jurisdiction. IC 33-3-5-2. Except when specifically authorized by statute, as in appeals from probate courts' estate tax decisions, IND. CODE 6-4.1-11-7, or appeals from circuit and superior courts' actions on tax warrants, IND. CODE 6-8.1-8-6, the court reviews final determinations of the State Board and the Indiana State Department of Revenue. IC 33-3-5-2. Because the State Board is wholly without authority under IC 5-14-1.5-7 to enter a final determination over an Open Door Law claim, the court has nothing to review within the context of TALL's original tax appeal. Therefore, the court dismisses TALL's Open Door Law claim.

III

THE LOCAL GOVERNMENT TAX CONTROL BOARD
After receiving the proposal for the bond issue, TALL's accompanying objections under IND. CODE 6-1.1-20-5(b), and the State Board hearing officer's report and recommendation, the State Board exercised its discretion under IND. CODE 6-1.1-18.5-8 and sent the case to the Local Government Tax Control Board (the Local Board) for its review and recommendations. The Local Board is a nine member panel whose primary task is to make recommendations to the State Board on local government appeals for relief from property tax levy limitations. See IND. CODE 6-1.1-18.5-11 through 6-1.1-18.5-19.1; State ex rel. State Bd. of Tax Comm'rs, 271 Ind. at 375, 392 N.E.2d at 1163.
In a typical case, a "civil taxing unit that determines that it cannot carry out its governmental functions for an ensuing calendar year under the levy limitations imposed ... may ... appeal to the state board of tax commissioners for relief from those levy limitations." IC 6-1.1-18.5-12(a) (Section 12). Upon receiving a relief petition, the State Board is obligated to forward the petition to the Local Board for a hearing and review. Section 12(b). Neither Board, however, is required to grant any relief, State ex rel. State Bd. of Tax Comm'rs at 380, 392 N.E.2d at 1166, and the State Board retains full discretion to accept, reject, or modify the Local Board's recommendation. IC 6-1.1-18.5-15.
If a local governmental unit wants to issue a bond, a different procedure applies. As will be discussed below, IC 6-1.1-20 establishes the procedures for local governmental entities to propose bond issues and get State Board approval. In addition to its rights and responsibilities under IC 6-1.1-20, the State Board "may seek recommendations from the local government tax control board ... when determining whether to authorize incurring the bonded indebtedness." IC 6-1.1-18.5-8(b) (emphasis added). Unlike a local governmental unit's Section 12 appeal, then, the State Board is not required to seek the Local Board's input in bond cases, and the Local Board is not limited in the recommendations it can make. See IC 6-1.1-18.5-13 (defining and limiting the relief the Local Board can recommend in section 12 appeals). Given the State Board's absolute discretion in seeking advice from the Local Board and the Local Board's free rein in making recommendations, coupled with the State Board's ability to reject Local Board advice in section 12 appeals, it follows that the State Board is under no obligation to follow the Local Board's recommendation in a bonding case.
Against this backdrop, the District and the State Board contend 1) the evidence heard by the Local Board is imputed to the State Board as a matter of law; 2) the only evidence the court can hear is the evidence presented to the Local Board; and 3) all Miller's testimony before the court is beyond the scope of the testimony before the Local Board and should therefore be stricken as inadmissible under the court's limited standard of review in State Board appeals.[7] None of these contentions is correct.
*256 As the discussion above demonstrates, the Local Board is not an arm of the State Board. Its membership is separate from the State Board's, IC 6-1.1-18.5-11, and the scope of its discretion is controlled by statute, not by the State Board. The State Board has the authority to hire hearing officers and other employees. See IND. CODE 6-1.1-30-8. These people work for the State Board, and the hearings the hearing officers conduct constitute hearings before the State Board. See IND. CODE 6-1.1-30-10 through 12. On the other hand, the Local Board is not an employee of the State Board, and in light of the entire statutory scheme of the two Boards, the court holds the Local Board is not so attached to the State Board that evidence before the Local Board is, as a matter of law, evidence before the State Board. Indeed, to reach the contrary result would impinge on the State Board's discretion necessarily implied by IC 6-1.1-18.5-8 to hold additional hearings and take additional evidence after the Local Board has acted.
In this case, however, after the State Board requested the Local Board's recommendation, the Local Board recommended approval and the State Board followed the Local Board's recommendation without further hearing. In this type of situation, there is no purpose served by requiring a petitioner like TALL to present additional evidence to the State Board simply to preserve issues already developed before the Local Board. The court therefore holds the evidence before the Local Board in this case constitutes evidence before the State Board.
The disposition of the Respondents' remaining contentions flows from the disposition of the first. The State Board assigned a hearing officer to this case. She held a hearing on July 17, 1992, and took evidence. The evidence she took is as admissible in this court as if the Local Board had not acted: the Local Board's hearing can only augment that of the State Board's own hearing officer; it cannot supplant it. See IND. CODE 6-1.1-30-10 through 12. Finally, the court has fully reviewed the transcript of the October 14, 1992 hearing before the Local Board and the summary of the proceedings at the July 17, 1992, hearing before the hearing officer: these documents contain all of TALL's complaints about the District's alleged procedural violations of IC 6-1.1-20 that Miller later testified about before the court. The evidence TALL placed before the court was therefore within the scope of proper evidence, and the Respondents' motion to strike is denied.[8]

IV

THE BOND PETITION PROCEDURES
TALL's appeal stems from a municipal bond proposal under IND. CODE 6-1.1-20. Under this chapter, local governmental entities have the authority, "subject to the limitations provided by law, [to] issue any bonds, notes, or warrants ... [they] consider[] necessary." IND. CODE 6-1.1-20-2. Bonds so issued may be paid through property tax levies. Property taxes may not be used, however, unless at least fifty owners of real property subject to taxation by the entity file a petition or petitions requesting the issuance of the bonds. IND. CODE 6-1.1-20-3(1). Each of the petitions must be verified under oath by at least one qualified petitioner and the county auditor of the county in which the entity is located must attach a certificate to each petition stating the number of petitioners who are owners of real property subject to taxation by the entity. IC 6-1.1-20-3(2) and (3).
After a petition has been filed, an entity must give published and posted notice prior to issuing the requested bonds. IND. CODE 6-1.1-20-4. All affected land owners then have the opportunity to remonstrate. Id. If there are more qualified *257 remonstrators than qualified petitioners, the entity cannot issue the bonds, and a new petition cannot be circulated until one year after the filing of the remonstrance. Id. For bond issues in excess of $5,000, if ten or more affected taxpayers file a remonstrance petition stating facts they believe demonstrate the bond issue is unnecessary or excessive, the county auditor must forward the remonstrance petition and any other relevant information to the State Board. IND. CODE 6-1.1-20-5(b). The State Board must then hold a hearing on the matter and issue a final decision approving, disapproving, or reducing the amount of the proposed bond issue. IND. CODE 6-1.1-20-6. See also IC 6-1.1-18.5-8(c).
In the case at bar, the entire petitioning process was fraught with deficiencies. The petition requesting the bonds consisted of thirty-three separate counterparts containing a total of 1,469 signatures. In several cases, people signed their own name and their spouse's name. Furthermore, the verification of the various counterparts was improperly completed. Don Whitehead, the director of the present landfill, verified several petitions at the direction of a Gibson County Commissioner, despite not having witnessed the signatures of the petitioners. Another landfill employee, Darrell Richardson, failed to sign his verification under oath. The notary's signature and seal were added subsequently. Additionally, out of a total of thirty-three counterparts, only four have verified affidavits specifically referring to an individual counterpart. The other twenty-nine verifying affidavits are devoid of reference to a corresponding counterpart and are therefore of virtually no use in attesting to the validity of any petitioner's signature. Despite this poor compliance with the statutory procedures, however, the petition is not invalid.
IC 6-1.1-20-3 requires "at least" fifty properly verified and certified signatures of affected landowners for a petition to be valid. The statute is plain and unambiguous, and the court cannot rewrite it to require that "all" the signatures be proper. See C & C Oil Co. v. State Bd. of Tax Comm'rs (1991), Ind.Tax, 570 N.E.2d 1376, 1380 (citing DeHart v. State (1984), Ind. App., 471 N.E.2d 312, 314, trans. denied). See also Aylesworth v. McKesson (1981), Ind. App., 421 N.E.2d 422, trans. denied.[9] Because the parties stipulated that the petition contained at least fifty valid signatures, Record of August 6, 1993 trial at 6-7, the petition is valid.[10]

V

THE FINAL ORDER
In addition to its procedural complaints, TALL also challenges the substance of the State Board's approval of the proposed bond issue. That is, TALL is convinced the bonds and the new landfill are simply bad ideas and claims the bonds are a "gross waste of taxpayers' money." Petition, ¶ 6(B)(i). To prevail on the substance of its complaint, TALL must show the bond issue was "unnecessary or excessive." IC 6-1.1-20-5(b). The evidence TALL presented claimed that Gibson County's current landfill was not as full as the District believed and that the new landfill would cost an excessive amount. TALL also presented evidence the county's landfill needs could be met at an established landfill in adjacent Pike County.
The court will reverse a final determination of the State Board only if the *258 determination "is unsupported by substantial evidence, constitutes an abuse of discretion, exceeds statutory authority, or is arbitrary and capricious." Wirth, 613 N.E.2d at 876 (citing Hatcher v. State Bd. of Tax Comm'rs (1992), Ind.Tax, 601 N.E.2d 19, 20). This is a difficult standard of proof to meet in any case. But this appeal has become so mired in various motions, responses, and replies on irrelevant matters from all parties, that TALL has wholly failed to make its case on the substance of its complaint that the bonds should not be issued. In essence, TALL merely claims the landfill will be too costly and, as the name "Taxpayers for Alternate Landfill Location" plainly implies, in a bad location, i.e., near TALL's members' properties. This is not enough to show the State Board abused its discretion in approving the proposed bond issue.

VI

THE AMENDED ORDER
Finally, TALL claims the State Board lacked the authority to amend the original order. The original order, issued October 16, 1992, stated:
IT IS THEREFORE ORDERED that the objecting petition filed against the proposed $2,100,000 bond issue of the Gibson County Solid Waste Management District be denied and the issuance of these bonds is now approved contingent upon necessary approvals of the landfill project from other State and Federal Agencies.

Joint Exhibit 1 (emphasis added). On January 10, 1993, the District filed a petition to amend the order, claiming IDEM approval could not be obtained unless the District first acquired title to the subject property. The District therefore asked the State Board to remove the contingency requiring the approval of IDEM and other agencies. The State Board took written argument from TALL in response to the petition, but held no evidentiary hearing or oral argument. On February 5, 1993, one member of the State Board signed an amended order deleting the contingency clause.
The controversy over IDEM approval arose because IDEM, through the Solid Waste Management Board, controls licensing of municipal landfills in Indiana. See IND. CODE 13-1-12-8. Before IDEM will issue a permit for a landfill, its regulations require the interested party or parties to file a permit application. See 329 I.A.C. 2-8. The application process has two minimum requirements: the signature of the landfill facility owner and the signature of the owner of the landfill site. 329 I.A.C. 2-8-1(b). In the case at bar, the signature requirement has been problematic.
Gibson County initiated condemnation proceedings for the Oakland City site. The case is now pending in the Pike Circuit Court, which has determined under IND. CODE 32-11-1-4 that Gibson County is entitled to condemn the property. The question of valuation remains unresolved, and the county has yet to acquire title to the land. Moreover, without the proceeds of the bond issue, the county lacks the funds to pay the assessed damages and commence site preparation pending final transfer of title. See IND. CODE 32-11-1-6; XX-XX-X-X.
The county, then, faced an apparent quandary. Without IDEM approval, the District could not issue the bonds. Without issuing the bonds, there were no funds to pay to acquire title to the Oakland City site. And without title to the Oakland City site, the District believed it could not properly complete the permit application for IDEM approval. IDEM's permit regulations, however, make allowance for a change of land ownership during the pendency of the application process.
Permit applications must include "[d]ocuments necessary to establish ownership... . in the person identified as the owner in the application or ... evidence satisfactory to the commissioner that ownership will be transferred to said owner prior to operation of the facility." 329 I.A.C. 2-8-2(a)(10) (emphasis added). Moreover, permits are not effective until "any real estate transfers necessary to vest legal title of the real estate upon which the permitted activity is to occur in *259 the name of the owner listed on the application have been completed, executed, and recorded and documents evidencing such transfer have been delivered to the commissioner." 329 I.A.C. 2-8-5(d)(2) (emphasis added).
In other words, a municipal government in the process of acquiring land for a landfill can list itself as the owner of the land on the permit application so the application process can proceed without having to wait for the final transfer of title. In the case at bar, though, there is no evidence before the court that the District has yet filed its application with IDEM showing the Pike Circuit Court's determination, and accordingly, no evidence that IDEM has refused to proceed with a permit application pending final transfer of title to the Oakland City site. The District did present evidence, however, that the landfill design process, one of the steps toward IDEM approval, could not proceed without payment to the designer involved, and that payment was impossible without the bond proceeds. Transcript of April 29, 1993 hearing at 168.
An amendment of the State Board's order may well ease the landfill development process, but there are nonetheless two fatal errors in the present amendment. First, the amended order was signed by only one Commissioner. The court expressed concern over this procedure in the first memorandum opinion in the case, and the State Board responded at trial by offering voluminous evidence that the practice of using single signatures in bonding cases is routine. Joint Exhibit 22. The State Board has a great deal of discretion to achieve its statutory mission. See, e.g., Centrium Group v. State Bd. of Tax Comm'rs (1992), Ind.Tax, 599 N.E.2d 242, 243 (citing Rogers v. State Bd. of Tax Comm'rs (1991), Ind.Tax, 565 N.E.2d 398, 399). Like all administrative agencies, it "has such implicit power and authority as is inherent in its broad grant of power from the legislature to regulate which is necessary to effectuate the regulatory scheme outlined by the statute." Northern Indiana Pub. Serv. Co., 548 N.E.2d at 158 (citing Board of Trustees v. State (1966), 247 Ind. 570, 219 N.E.2d 886, 890). No administrative agency, however, may act in excess of explicit statutory authority, see, e.g., Hatcher, 601 N.E.2d at 20 (quoting Bailey Seed Farms, Inc. v. State Bd. of Tax Comm'rs (1989), Ind.Tax, 542 N.E.2d 1389, 1391), and that is precisely what the State Board does when it acts through only one of its Commissioners. The State Board's organic statute explicitly provides that "[a]ny two (2) members of the board constitute a quorum for the transaction of business." IND. CODE 6-1.1-30-1 (emphasis added). This language is unambiguous, and the court must give it its plain meaning, C & C Oil Co., 570 N.E.2d at 1380, and hold the State Board to that meaning. It takes two Commissioners to transact business and the State Board simply cannot issue orders through only one Commissioner.[11]
Second, assuming arguendo at least two Commissioners had signed the amended order, the process leading to the amendment was also defective. When a remonstrance petition against a proposed bond issue has been filed under IC 6-1.1-20-5, the State Board must hold a hearing before rendering its decision on the proposed issue. IC 6-1.1-20-6(a). Although the decision on the proposed issue is final, IC 6-1.1-20-6(b), the State Board retains the implicit authority to amend its decision. See Northern Indiana Pub. Serv. Co., 548 N.E.2d at 158. But that implicit authority cannot extend beyond the scope of the State Board's statutory mandate. Administrative agencies do not have powers beyond those expressly or impliedly granted by statute, and courts must resolve all doubtful claims of authority against the agency. Indiana State Bd. of Embalmers and Funeral Directors v. Kaufman (1984), Ind. App., 463 N.E.2d 513, 521, trans. denied. It follows, then, that no *260 administrative agency has the prerogative to make decisions properly committed to any other agency, and it is the prerogative and duty of IDEM, not the State Board, to control landfill operations.
The State Board is Indiana's property tax specialist; it has no expertise in environmental matters. Nonetheless, on the bald, unverified representation of the District's lawyer that IDEM would not proceed with the approval process without transfer of title, and despite TALL's written argument detailing IDEM's regulations to the contrary, the State Board amended its order to delete the contingency requiring IDEM and other agency approval. Granted, the requirements of the bonds themselves did not change, and the bonds are still to be issued only to pay for a landfill and associated costs. Even so, if the District uses the bond proceeds to acquire fee title to the Oakland City site, and IDEM ultimately denies approval, the bond proceeds will be lost. If the District acquires less than fee title and IDEM denies approval, not only will the bond proceeds be lost, but the condemnee or other interested party will be able to reacquire the land. See IND. CODE 32-11-1-11(a)(4); Schwartz v. Castleton Christian Church, Inc. (1992), Ind. App., 594 N.E.2d 473, trans. denied. Whether through refusal to pay or simple lapse of time, a condemnor can change its decision to condemn land and avoid the condemnation only before paying. See IC XX-XX-X-XX; Town of Pendleton v. Poor (1963), 244 Ind. 107, 191 N.E.2d 3.
Given the potentially costly outcome to the taxpayers of Gibson County should IDEM refuse approval, prudence dictates at the very least that the State Board take evidence on the District's petition to amend the contingent order. Evidence, as opposed to counsel's speculative assertions, of IDEM's general practice under its regulations and its plans for disposition of the permit application from the Oakland City site will be most helpful to the State Board in deciding whether to remove the contingency. Without that evidence, the removal of the contingency is reversible as an abuse of discretion unsupported by substantial evidence.[12]

CONCLUSION
TALL has failed to show the State Board's initial decision approving the District's proposed bond issue was the result of an abuse of discretion or other error. The State Board's October 16, 1992, order is therefore AFFIRMED. The State Board, however, did exceed its statutory authority and abuse its discretion when it amended its order through only one Commissioner solely on the strength of counsel's unverified representations without hearing any evidence. The court therefore REVERSES the State Board's amended order and remands the questions raised by the District's January 10, 1993 petition to amend to the State Board for further proceedings consistent with this opinion.
NOTES
[1] In an interlocutory memorandum decision filed on June 24, 1993, the court held this case was a public lawsuit under IND. CODE 34-4-17. Therefore, in accordance with IND. CODE 34-4-17-7, the court has expedited trial and disposition of the matter, holding trial on August 6 and issuing this opinion on October 13, after receiving the last of the parties' written briefs and arguments on September 23.
[2] IC 6-1.1-20-6 states "[t]he action taken by the state board of tax commissioners on the proposed issue is final." In a case similar to this one, our supreme court construed analogous language in IND. CODE 6-1.1-17-16(e) and IND. CODE 6-3.5-1-12(g) (repealed, now IND. CODE 6-1.1-18.5-15) and held the language "prescrib[ed] finality of decision for the purpose of facilitating rather than foreclosing any subsequent judicial review." State ex rel. State Board of Tax Commissioners v. Marion Superior Court, Civil Division, Room No. 5 (1979), 271 Ind. 374, 378, 392 N.E.2d 1161, 1165.
[3] Under State ex rel. State Bd. of Tax Comm'rs., 271 Ind. 374, 392 N.E.2d 1161, the State Board's decision is "final" in that it triggers the constitutional right to judicial review; that is, the finality of the decision means the requirement of exhaustion of administrative remedies has been met. As will be discussed in Section VI, infra, however, the State Board as a general matter retains the implicit power and authority to amend its orders to further its statutory mission. See Northern Indiana Pub. Serv. Co. v. Citizens Action Coalition (1989), Ind., 548 N.E.2d 153, 158.
[4] IND. CODE 5-14-1.5-1 through 5-14-1.5-8.
[5] Until the very end of the briefing, the parties were arguing over whether TALL's action was timely filed within the meaning of the Open Door Law. Since 1987, IC 5-14-1.5-7 has provided that actions like the present one "shall be commenced ... prior to the delivery of any warrants, notes, bonds, or obligations if the relief sought would have the effect, if granted, of invalidating the notes, bonds, or obligations." IC 5-14-1.5-7(b)(1). "[W]ith respect to any other subject matter, [the action shall be commenced] within thirty (30) days of either... the date of the act or failure to act complained of; or ... the date that the plaintiff knew or should have known that the act or failure to act complained of had occurred; whichever is later." IC 5-14-1.5-7(b)(2).

Throughout most of the proceedings, however, the Respondents attempted to rely on the pre-1987 version of the statute. This earlier version set an outside limit of thirty days after the complained of act to commence an action in all cases, including actions to invalidate bonds. See Historical Note, IC 5-14-1.5-7. The distinction between the versions is tremendous. Under the old law, bond cases were subject to a strict thirty day time limit; under the new law, an action to invalidate bonds may be brought at any time prior to the bonds' delivery. Using the outdated version as their benchmark, the Respondents claimed TALL's March 1993 petition was untimely because TALL filed it more than thirty days after the District allegedly violated the Open Door Law.
Simply put, TALL seeks to invalidate the District's proposed bond issue. Since 1987, IC 5-14-1.5-7 has deemed an action like TALL's as timely if commenced before the bonds are delivered. The District's bonds had not been delivered when TALL filed its petition, and the appeal is therefore indisputably timely. The Respondents' clumsy attempt to rely on a statute that was completely reworked over half a decade before TALL commenced its action is, at best, an inappropriate mistake.
[6] In general, however, the State Board is exempt from the Open Door Law's notice requirements. IC 5-14-1.5-5(f)(1).
[7] The court generally cannot review issues or evidence not presented to the State Board. See, e.g., Scheid, 560 N.E.2d at 1284. But see Wirth, 613 N.E.2d at 879-80 (discussing exceptions to the general rule).
[8] To the extent the Respondents' motion to strike goes to TALL's Open Door Law claim, the court's dismissal of the claim renders the motion moot.
[9] In Aylesworth, the court considered the effect of unverified and improperly verified counterparts to a remonstrance petition in a proposed bond issue. The court disallowed only those signatures which were invalid, not all the signatures. The distinction between the remonstrances in Aylesworth and the petition in the case at bar is immaterial. IC 6-1.1-20-4(a) requires remonstrance petitions to be verified and certified in exactly the same manner as the bond request petitions they challenge.
[10] Miller testified TALL would have gotten one more remonstrating signature than there were petitioning signatures had he known of the improprieties in the petitioning process, thereby delaying the bond issue for at least a year. See IC 6-1.1-20-4(b). This is utterly speculative and does not demonstrate the State Board abused its discretion.
[11] Because the State Board, when acting within the scope of its authority, has a great deal of discretion, the court does not prescribe any specific method for the State Board to comply with IC 6-1.1-30-1.
[12] TALL and its members, as proper remonstrators under IC 6-1.1-20-5, will have the opportunity to present evidence as well. But their evidence will go only to the subject matter of the petition to amend. The challenge to the underlying substance of the bonds is complete: the court has affirmed the State Board's initial decision that the bond issue is not "unnecessary or excessive" under IC 6-1.1-20-5(b), and that judgment is final and binding.