BOARD OF TRUSTEES OF the OHIO TOWNSHIP PUBLIC LIBRARY, Gene Essick, Marilee Garrison, Sherry Taber, Cynthia Burger, W. Brooks Martin, Newton Crenshaw, Lisa Peroni, and Evangeline Herr, Board Members, and Ohio Township Public Library Leasing Corporation, Appellants–Defendants,

v.

Patricia A. BROOKS, Donald G. Brooks, Sharon Gammon, Sandra K. McDaniel, James N.O. Bealmear, Timothy Ray Mosby and Joseph J. Schitter, Appellees–Plaintiffs.

No. 87A01–0208–CV–320.

Court of Appeals of Indiana.

March 17, 2003.

Michael A. Wilkins, Ice Miller, Indianapolis, IN, Attorney for Appellants.

S. Anthony Long, Boonville, IN, Attorney for Appellees.

## OPINION

MATHIAS, Judge.

Patricia A. Brooks, Donald G. Brooks, Sharon Gammon, Sandra K. McDaniel, James N.O. Bealmear, Timothy Ray Mosby, and Joseph J. Schitter ("the Petitioners") filed a complaint in Warrick Circuit Court, requesting an injunction against the imposition of property taxes for the purpose of paying for the construction of a new public library. The trial court granted the injunction. The Board of Trustees of the Ohio Township Public Library, the Board members individually, and the Ohio Township Public Library Leasing Corporation ("the Library Board") appeal, raising several issues, which we restate as whether the trial court erred when it concluded that the Petitioners' petitions satisfied the requirements of Indiana Code section 6–1.1–20–3.1.[1] Finding that the Petitioners did not satisfy the requirements of the statute, we reverse.

### Facts and Procedural History

In January of 1999, the Library Board decided to build a new public library in the center part of Ohio Township in Warrick County, Indiana. Plans for the construction of the library were prepared, and a budget of approximately $ 9,480,000 was estimated. On December 10, 2001, after giving the required notice, the Library Board passed a Preliminary Determination to engage in a twenty-two year lease with a maximum annual rental of $ 925,000. The proposed lease would cover the cost of building the new library and the interest that would accrue on the bonds, which the Library Board planned to issue in order to finance the project. Notice of the Preliminary Determination was published pursuant to Indiana Code section 6–1.1–20–3.1(2).

After the publication of the Preliminary Determination, the Petitioners and other opponents of the new library began circulating petitions to challenge the financing and construction of the new library. Patricia Brooks ("Brooks") obtained a copy of a petition for petition and remonstrance from the Warrick County Auditor's office, which was circulated among the citizens of Ohio Township. The Petitioners eventually collected approximately 720 signatures on the petition.

On January 16, 2002, a group of the Petitioners went to the Warrick County Auditor's office to present the petition to Richard Kixmiller ("Kixmiller"), the auditor. On January 18, 2002, Kixmiller certified that the petitions submitted by the Library Board.

---

1. Because we find this issue to be dispositive, we do not reach the other issues raised by the

Petitioners contained 639 signatures of real property owners in Ohio Township. Kixmiller later testified that this certification only applied to whether the signatures on the petition were taxpayers of Ohio Township; he stated that he could not certify that the signatures were actually the signatures of the persons they purported to be or certify as to their authenticity. Tr. pp. 120–21.

The petitions were then delivered to the Library Director, who delivered them to the Library Board. At a February 11, 2002 meeting, the Library Board decided to reject the petitions after reviewing them. The Library Board determined that the petitions did not satisfy the requirements of Indiana Code section 6–1.1–20–3.1 because the petition was not verified. Brooks was present at the meeting, but did not object to the Library Board's decision or try to explain why she believed that the petitions were valid. Brooks stated that she did not know that the petitions needed to be verified and that she was "going to have a lot of upset people." Tr. pp. 49–50, 137. On or about February 21, 2002, Brooks faxed a copy of the petition form used by the Petitioners to the State Board of Accounts. State Examiner Charles Johnson responded that the petition appeared to materially comply with the suggested form. Appellant's App. p. 287.

On February 22, 2002, the Petitioners filed a complaint, seeking an injunction against the Library Board to prevent them from proceeding with the construction of the new library until the Library Board had followed the petition and remonstrance procedure. A bench trial was conducted on March 8, 2002.

At trial, the Petitioners argued that they had verified the petitions when they had delivered them to Kixmiller. Kixmiller testified that when the petitions were submitted to him, he asked those present if they affirmed that the signatures were from owners of real property in Ohio Township, and the Petitioners who were present, responded affirmatively. Tr. pp. 109, 120. Each of the Petitioners who testified at trial confirmed that this exchange occurred. Tr. pp. 21–22, 59–66, 71–72, 80, 89. Kixmiller did not ask if any of the Petitioners had actually witnessed any signatures other than their own. Tr. pp. 48–49, 77, 85, 93–94, 118.

Before the trial, but after the Petitioners had delivered the petitions to the auditor's office, four of the Petitioners reviewed the petitions and identified the signatures that each of them had actually witnessed. The signatures were identified by highlighting and/or initialing them. By doing this, the Petitioners were able to identify 261 signatures that they had actually witnessed. The petitions were then submitted again to Kixmiller, and he determined that 256 of the identified signatures were real property owners in Ohio Township.

On July 15, 2002, the trial court entered its Findings of Fact, Conclusions of Law, and Order, granting the Petitioners' injunction and enjoining the Library Board from proceeding forward with the new library until they had fully and completely complied with the petition and remonstrance procedure. The trial court found that the petitions submitted by the Petitioners were sufficient because the Petitioners orally verified the petitions when they were submitted and substantiated their position when they testified under oath at trial. The Library Board now appeals.

**Discussion and Decision**

When a trial court has entered findings of fact, we apply a two-tiered standard of review. *In re J.W.*, 779 N.E.2d 954, 959 (Ind.Ct.App.2002). First, we determine

whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* We will only disturb the trial court's findings and judgment if they are clearly erroneous. *Id.* "Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them." *Brinkmann v. Brinkmann,* 772 N.E.2d 441, 444 (Ind.Ct. App.2002). On review, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* We only consider the evidence favorable to the judgment and all the reasonable inferences to be drawn therefrom. *Id.* "A judgment is clearly erroneous even though there is evidence to support it if the reviewing court's examination of the record leaves it with the firm conviction that a mistake has been made." *Id.* (citing *Owensby v. Lepper,* 666 N.E.2d 1251, 1256 (Ind.Ct.App.1996)).

■ The Library Board argues that the trial court erred when it concluded that the Petitioners' petitions satisfied the requirements of Indiana Code section 6–1.1–20–3.1. The Library Board contends that the petitions were not valid because they were not properly verified.

■ "The purpose of a remonstrance is to afford the opportunity to any person seeking to object to the proposed action of a body politic by taking the affirmative step to register their objection." *Forks v. Warsaw,* 257 Ind. 237, 242, 273 N.E.2d 856, 859 (1971). "In justice to the property owners when they must bear the burden of the cost of the improvements, they are frequently given by express provision of law an opportunity to protest or remonstrate against the proposed improvement...." Eugene McQuillin, Municipal Corporations, § 37.52 (3d ed.1997). Although the Indiana legislature has given taxpayers an opportunity to voice their concerns over these improvements through the remonstrance process, the process can only be initiated when a sufficient petition has been filed and all of the prerequisites of Indiana Code section 6–1.1–20–3.1 have been met. *Huntington County Cmty. Sch. Corp. v. Ind. State Bd. of Tax Comm'rs,* 757 N.E.2d 235, 239 (Ind.Tax 2001).

Under Indiana Code section 6–1.1–20–3.1, after the proper officers of a political subdivision make a preliminary determination to issue bonds or enter into a lease, and have given proper notice of this determination, if the owners of real property in the political subdivision wish to oppose that decision, they may do so through the remonstrance process. Ind.Code § 6–1.1–20–3.1 (2000 & Supp.2002). The remonstrance process is initiated only "if a sufficient petition requesting the application of a petition and remonstrance process has been filed as set forth in section 3.1 of this chapter[.]" Ind.Code § 6–1.1–20–3.2 (2000 & Supp.2002). For a petition to be sufficient it "must be verified under oath by at least one (1) qualified petitioner in a manner prescribed by the state board of accounts *before* the petition is filed with the county auditor." Ind.Code § 6–1.1–20–3.1(5) (emphasis added).

■ To verify a document is "[t]o confirm or to substantiate by oath or affidavit." Black's Law Dictionary 1556 (7th ed.1999). Verification, as defined by Indiana case law, means both the actual swearing to the truth by the subscriber and the certification by a notary. *Aylesworth v. McKesson,* 421 N.E.2d 422, 426 (Ind.Ct.App.1981). Any form of verification is sufficient if the essential purpose of subjecting the affiant to the penalties of perjury is served. *Huntington County,* 757 N.E.2d at 240 (citing *Rhoads v. Carmel Bd. of Zoning Appeals,* 562 N.E.2d 752, 754 (Ind.Ct.App.1990)).

The trial court found that the Petitioners were "subject to the penalties of

perjury by their words, actions, and understandings" when they submitted the petitions to the auditor and that at that time, the Petitioners "did state, affirm, attest, indicate, and/or verify to Auditor Kixmiller, orally, (1) the signatures were valid signatures of Ohio Township real property taxpayers, (2) they had witnessed signatures being made on the counterparts of the petition, and (3) the signatures on any such counterparts were authentic." Appellant's App. pp. 9–10, 14. The trial court also found that the Petitioners' testimony at trial substantiated their position that at the time they submitted the petitions, they verified the signatures and considered themselves to be under oath. Appellant's App. p. 14.

In this case, the petitions submitted by the Petitioners did not contain any sort of verification certificate or any written verification on any of the counterparts. Kixmiller testified that he asked the Petitioners who were present when the petitions were submitted if they affirmed and attested that the signatures were of Ohio Township real property owners, and the Petitioners answered affirmatively. Tr. pp. 109, 120. Each of the Petitioners who testified at the trial confirmed that this exchange occurred. The Petitioners testified that they believed that they were under oath at that time. The Petitioners were not asked if they affirmed and attested that they had witnessed all of the signatures or that the signatures were authentic.

Although the Petitioners believed that they were under oath at the auditor's office, they only acknowledged that they were verifying that the signatures were of property owners in Ohio Township. At no time did the Petitioners verify that they had witnessed all of the signatures or that the signatures were authentic. In fact, the petitions were circulated by several people, some of whom were not even present when the petitions were submitted to the auditor. Brooks testified that she had left one of the petitions unattended at a business for a period of time. Tr. pp. 44–45. Under Indiana Code section 6–1.1–20–3.2, after the signatures have been collected, the person collecting the signatures "must swear or affirm before a notary public that the [person] witnessed each signature." Ind.Code § 6–1.1–20–3.2(3)(C).

Under these facts and circumstances, the petitions submitted by the Petitioners were not properly verified prior to filing them with the auditor, as is required under Indiana Code section 6–1.1–20–3.1(5). The petitions did not contain any written verification, and the oral attestation given by Kixmiller to the Petitioners did not establish that the Petitioners were verifying that the signatures were authentic and that they witnessed them. The Petitioners also were never sworn to tell the truth or informed that they would be subject to the penalties of perjury.

The Petitioners claim because the State Board of Accounts did not require any specific verification to meet the requirements under the statute at the time they submitted the petitioners, they properly verified the petitions because they believed they were under oath. Although no specific language was required at that time, the petitions were required to be verified, which means swearing as to the truth of the petition. *Aylesworth*, 421 N.E.2d at 426. In order to verify the petitions, the Petitioners would have had to swear that the signatures contained in the petition were true, and the only way to do that would have been to verify that they had witnessed all of them. Therefore, even though a specific verification was not required, the verification needed to consist of at least an attestation that the signatures were authentic and that the signatures had been witnessed to be sufficient.

The Petitioners also contend that even though all of the 720 signatures that were originally submitted were not personally witnessed by them, they presented evidence at trial that at least 267 of the signatures had been personally witnessed. This number is in excess of the 250 that are required under the statute. *See* Ind. Code § 6–1.1–20–3.1(4). Although this number is in excess of the statutory minimum, section 6–1.1–20–3.1(5) requires that verification be complete before the petition is filed with the county auditor. Ind.Code § 6–1.1–20–3.1(5). Because this identification of the signatures that were personally witnessed occurred after the petitions had been submitted to the auditor, it does not cure the absence of a verification.

The remonstrance process provides an opportunity for taxpayers to voice their objections to proposed actions by political subdivisions of which the taxpayers will bear the burden of the cost. *See* Eugene McQuillin, Municipal Corporations, § 37.52 (3d ed.1997). Although the taxpayers are given this opportunity, the remonstrance process can only be initiated if the prerequisites are met. *Huntington County,* 757 N.E.2d at 239.

The Petitioners did not comply with the mandatory requirement of verifying the petitions under Indiana Code sections 6–1.1–20–3.1 and 6–1.1–20–3.2. Because they did not comply with this requirement, the petition and remonstrance process cannot be initiated, and the trial court erred when it enjoined the Library Board from proceeding forward with the new library project until the petition and remonstrance process had been fully completed.

Reversed.

BAKER and RILEY, JJ., concur.